631 A.2d 453

**STATE of Maryland**

v.

**Harry Whinna LANCASTER.**

**No. 14, Sept. Term, 1991.**

Court of Appeals of Maryland.

Oct. 7, 1993.

386

388

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The defendant in this criminal case was found guilty of a fourth degree sexual offense under Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 464C(a)(2), which prohibits, *inter alia,* engaging in fellatio "with another person who is 14 or 15 years

of age and the person performing the sexual act is four or more years older than the other person." [1] Based upon the same acts of fellatio, the defendant was also found guilty of committing an oral sex act in violation of Art. 27, § 554, which makes it unlawful, *inter alia,* for a person to take "into his or her mouth the sexual organ of any other person...." [2] The defendant received separate sentences on each of the guilty verdicts. The Court of Special Appeals, however, held that

---

1. Section 464C provides in pertinent part as follows:
 "**§ 464C. Fourth degree sexual offense.**
 "(a) *What constitutes.*—A person is guilty of a sexual offense in the fourth degree if the person engages:

 \* \* \* \* \* \*

 "(2) In a sexual act with another person who is 14 or 15 years of age and the person performing the act is four or more years older than the other person;

 \* \* \* \* \* \*

 "(b) *Penalty.*—Any person violating the provisions of this section is guilty of a misdemeanor and upon conviction is subject to imprisonment for a period of not more than one year, or a fine of not more than $1,000, or both fine and imprisonment."
 Art. 27, § 461, provides in pertinent part as follows:
 "**§ 461. Definitions.**
 "(a) *In general.*—In this subheading, the following words have the meanings indicated.

 \* \* \* \* \* \*

 "(e) *Sexual act.*—'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes."

2. Section 554 provides in pertinent part as follows:
 "Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be fined and imprisoned within the limits above prescribed in the discretion of the court."

the § 554 offense charged in this case contained no elements which were not also contained in the § 464C(a)(2) offense and that, therefore, the § 554 offense was an included offense which, for sentencing purposes, merged into the § 464C(a)(2) offense. Consequently, the Court of Special Appeals vacated the sentence imposed for the violation of § 554. We granted the State's petition for a writ of certiorari to consider the State's argument that the § 554 offense charged in this case has a distinct element not found in the § 464C(a)(2) offense and that, for this reason, the § 554 offense is not included within the § 464C(a)(2) offense and therefore does not under Maryland law merge into the § 464C(a)(2) offense.

## I.

We have often pointed out that " '[u]nder settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is a lesser included offense of the other, ... when both offenses are based on the same act or acts, is the so-called "required evidence test." ' " *In re Montrail M.*, 325 Md. 527, 531, 601 A.2d 1102, 1104 (1992), quoting *Williams v. State*, 323 Md. 312, 316, 593 A.2d 671, 673 (1991). *See Eldridge v. State*, 329 Md. 307, 319, 619 A.2d 531, 537 (1993); *Biggus v. State*, 323 Md. 339, 350, 593 A.2d 1060, 1065 (1991); *Snowden v. State*, 321 Md. 612, 616, 583 A.2d 1056, 1059 (1991), and cases there cited.

The required evidence test " 'focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.' " *Snowden v. State, supra*, 321 Md. at 617, 583 A.2d at 1059, quoting *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465, 473 (1986). Stated another way, the " 'required evidence is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not,' " there is no merger under the required evidence test even though both offenses are based upon the same act or acts. " 'But,

where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other,' " and where both "offenses are based on the same act or acts, . . . merger follows. . . ." *Williams v. State, supra*, 323 Md. at 317–318, 593 A.2d at 673, quoting in part *Thomas v. State*, 277 Md. 257, 267, 353 A.2d 240, 246–247 (1976).

When there is a merger under the required evidence test, separate sentences are normally precluded. Instead, a sentence may be imposed only for the offense having the additional element or elements. *See, e.g., In re Montrail M., supra*, 325 Md. at 534, 601 A.2d at 1105; *Biggus v. State, supra*, 323 Md. at 350–351, 593 A.2d at 1065–1066; *Snowden v. State, supra*, 321 Md. at 617–619, 583 A.2d at 1059; *Middleton v. State*, 318 Md. 749, 760–761, 569 A.2d 1276, 1281 (1990); *State v. Jenkins, supra*, 307 Md. at 521, 515 A.2d at 473; *Johnson v. State*, 283 Md. 196, 204, 388 A.2d 926, 930 (1978); *Flannigan v. State*, 232 Md. 13, 19, 191 A.2d 591, 594 (1963).

When applying the required evidence test to multi-purpose offenses, *i.e.*, offenses having alternative elements, a court must "examin[e] the alternative elements relevant to the case at issue." *Snowden v. State, supra*, 321 Md. at 618, 583 A.2d at 1059.[3] *See State v. Ferrell*, 313 Md. 291, 298, 545 A.2d 653, 656 (1988); *Nightingale v. State*, 312 Md. 699, 705, 542 A.2d 373, 376 (1988); *Newton v. State*, 280 Md. 260, 268–273, 373 A.2d 262, 266–269 (1977); *Thomas v. State, supra*, 277 Md. at 268–269, 353 A.2d at 247–248. *See also United States v. Dixon*, —— U.S. ——, ——, 113 S.Ct. 2849, 2857, 125 L.Ed.2d 556, 569 (1993); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

---

**3.** By use of the phrase "alternative elements," our cases do not mean that each alternative manner of committing the offense must be mutually exclusive. Instead, the phrase simply refers to an offense which, under the statutory language itself or the common law requirements, may be committed in two or more different ways, any one of which is sufficient for a conviction. *See, e.g., Biggus v. State*, 323 Md. 339, 344–350, 593 A.2d 1060, 1062–1065 (1991).

■ The required evidence test has also sometimes been referred to as the "same evidence" test,[4] the "elements" test,[5] the "same elements" test,[6] and the *"Blockburger"* test.[7] In resolving questions of merger, the required evidence test is applicable to both common law offenses and statutory offenses. *Williams v. State, supra,* 323 Md. at 317, 593 A.2d at 673; *Snowden v. State, supra,* 321 Md. at 617, 583 A.2d at 1059. *See also State v. Ferrell, supra,* 313 Md. at 297–298, 545 A.2d at 656.[8]

---

**4.** *Thomas v. State,* 277 Md. 257, 262–267, 353 A.2d 240, 244–247 (1976), and several cases there cited.

**5.** *Hagans v. State,* 316 Md. 429, 449–450, 559 A.2d 792, 801–802 (1989).

**6.** *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568 (1993).

**7.** *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), is probably the most frequently cited case dealing with the required evidence test, and it is the case which gave the test one of its names. The principle, however, long antedates *Blockburger.* As pointed out in the *Blockburger* opinion itself, the test was earlier expressly adopted by the United States Supreme Court in *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), which relied upon the opinion of the Supreme Judicial Court of Massachusetts in *Morey v. Commonwealth,* 108 Mass. 433 (1871). Moreover, as very recently noted by the Supreme Court in *United States v. Dixon, supra,* —— U.S. at ——, 113 S.Ct. at 2860, 125 L.Ed.2d at 573, and by this Court several years ago in *Thomas v. State, supra,* 277 Md. at 266, 353 A.2d at 246, the test was followed by the United States Supreme Court at least as early as *In re Nielsen,* 131 U.S. 176, 187–188, 9 S.Ct. 672, 676, 33 L.Ed. 118, 122 (1889), which also relied on *Morey v. Commonwealth, supra.* It is the principal test which has traditionally been applied to determine whether one offense is an included offense of another. *See* the discussions in *Hagans v. State supra,* 316 Md. at 445–450, 559 A.2d at 799–802; *Thomas v. State, supra,* 277 Md. at 262–267, 353 A.2d at 245–247; and *Veney v. State,* 227 Md. 608, 613–614, 177 A.2d 883, 886 (1962).

**8.** In addition to being the normal standard for determining merger of offenses under Maryland common law, the required evidence test is also the usual test for determining when two separate offenses, including both statutory and common law offenses, shall be deemed the same for purposes of the prohibition against double jeopardy. *See, e.g., United States v. Dixon, supra,* —— U.S. at ——, 113 S.Ct. at 2856, 125 L.Ed.2d at 568; *Brown v. Ohio,* 432 U.S. 161, 166–169, 97 S.Ct. 2221,

■ Although the required evidence test is the normal standard under Maryland law for determining merger of offenses, it is not the exclusive standard. Nevertheless, under our cases, it is the "threshold" test. *Williams v. State, supra,* 323 Md. at 320, 593 A.2d at 675. We have consistently approached merger issues by first applying the required evidence test; if that test is met, "merger follows as a matter of course." *In re Montrail M., supra,* 325 Md. at 533, 601 A.2d at 1104. It is only when there is no merger under the required evidence test that other criteria are considered to determine whether the offenses should merge.[9] *See generally, e.g., Biggus v. State, supra,* 323 Md. at 356, 593 A.2d at 1068–1069; *Williams v. State, supra,* 323 Md. at 318, 320–321, 593 A.2d at 675; *Monoker v. State,* 321 Md. 214, 219–224, 582 A.2d 525, 527–529 (1990); *White v. State,* 318 Md. 740, 742–748, 569 A.2d 1271, 1273–1275 (1990); *Nightingale v. State, supra,* 312 Md. at 702, 542 A.2d at 374; *Hunt v. State,* 312 Md. 494, 510, 540 A.2d 1125, 1132–1133 (1988); *State v. Jenkins, supra,* 307 Md. at 517–521, 515 A.2d at 473–475.

■ The only exception to the principle that merger follows as a matter of course if one offense is included within the other under the required evidence test, is where, under some circumstances, the General Assembly has specifically or expressly authorized multiple punishments. Thus, "when *specifically* authorized by the legislature, cumulative sentences . . . may under some circumstances be imposed," *Randall Book Corp. v. State,* 316 Md. 315, 323, 558 A.2d 715, 719 (1989), emphasis added. *See, e.g., Whack v. State,* 288 Md. 137, 143–

---

2225–2227, 53 L.Ed.2d 187, 193–196 (1977); *Schrimsher v. State,* 325 Md. 88, 91, 599 A.2d 444, 446 (1991); *Gianiny v. State,* 320 Md. 337, 340–341, 577 A.2d 795, 797 (1990); *Middleton v. State,* 318 Md. 749, 756–759, 569 A.2d 1276, 1279–1280 (1990); *State v. Ferrell,* 313 Md. 291, 295–299, 545 A.2d 653, 655–657 (1988), and cases there cited.

9. These other criteria include "the rule of lenity . . . as a principle of statutory construction," as well as "the position taken in other jurisdictions," "whether the type of act has historically resulted in multiple punishment," and the "fairness of multiple punishments in a particular situation," *White v. State,* 318 Md. 740, 745–746, 569 A.2d 1271, 1274 (1990).

150, 416 A.2d 265, 268–271 (1980), *appeal dismissed and cert. denied,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981); *Newton v. State, supra,* 280 Md. at 274 n. 4, 373 A.2d at 269 n. 4.

## II.

Turning to the facts of this case, the defendant Harry Whinna Lancaster was convicted by a jury in the Circuit Court for Allegany County of a fourth degree sexual offense under Art. 27, § 464C(a)(2), and of an oral sex act proscribed by Art. 27, § 554. It is undisputed that the same act or acts of fellatio formed the basis for both guilty verdicts.

The pertinent State's evidence upon which the two guilty verdicts were based disclosed the following. Louis W., a fifteen year old boy, met the defendant in July 1988. The defendant befriended Louis by taking the boy skating and out to eat. Eventually the defendant brought Louis to his home where, on several occasions from July 1988 to January 1989, the defendant performed fellatio on Louis. According to Louis's testimony at trial, early in their relationship the defendant warned Louis not to tell anyone about the instances of oral sex.

For the § 464C(a)(2) fourth degree sexual offense, the circuit court imposed the maximum penalty, one year imprisonment and a fine of $1,000. For the § 554 offense, the circuit court again imposed the maximum penalty, ten years imprisonment and a fine of $1,000. Five years of the prison term were suspended in favor of five years probation. The terms of imprisonment were to run concurrently.

Lancaster took an appeal to the Court of Special Appeals, arguing, *inter alia,* that, under the required evidence test, the § 554 offense is an included offense of and merges into the § 464C(a)(2) fourth degree sexual offense. Therefore, Lancaster argued, the ten year sentence imposed for the § 554 offense should be vacated. *See Lancaster v. State,* 86 Md. App. 74, 80, 585 A.2d 274, 277 (1991).

The State, agreeing that the required evidence test furnished the standard for determining the merger issue, argued in the Court of Special Appeals that the offenses did not merge under the required evidence test because each offense has distinct elements. (State's brief in the Court of Special Appeals at 3–5). According to the State, the § 554 crime is not an included offense because, as § 554 was construed by this Court in *Schochet v. State,* 320 Md. 714, 580 A.2d 176 (1990), the offense requires proof of facts which need not be proven to establish a fourth degree sexual offense under § 464C(a)(2). Specifically, the State contended that because § 554 does not encompass heterosexual non-commercial acts in private between consenting adults, it is incumbent upon the State, in order to obtain a conviction under § 554, to prove as an element of the offense that the sexual acts did not fall into such category. *See Lancaster v. State, supra,* 86 Md.App. at 82, 585 A.2d at 278.

The Court of Special Appeals rejected the State's position on the merger issue, agreed with Lancaster's merger argument, and vacated the sentence under § 554. Otherwise, the intermediate appellate court found no merit in Lancaster's contentions and affirmed the conviction and sentence for the fourth degree sexual offense under § 464C(a)(2). *Lancaster v. State, supra,* 86 Md.App. 74, 585 A.2d 274.

The Court of Special Appeals in its opinion pointed to the undisputed proposition that the fourth degree sexual offense under § 464C(a)(2) "requires proof of two facts that § 554 does not, namely that the victim is 14 or 15 years of age and that the accused is at least four years older." 86 Md.App. at 82, 585 A.2d at 278. The intermediate appellate court then addressed the State's theory that the § 554 offense is not included within the § 464C(a)(2) fourth degree sexual offense because the § 554 offense requires proof of facts not required under § 464C(a)(2), stating (*ibid.*):

"The State strenuously objects to the merger of § 464C and § 554, relying on *Schochet v. State,* 320 Md. 714, 580 A.2d 176 (1990), for the proposition that in addition to proving that an unnatural or perverted practice occurred,

the State must also prove that it was either nonconsensual, commercial, homosexual, involved a juvenile or not performed in private. *Schochet* involved a sex act between two heterosexual, consenting adults in the privacy of one's home. Contrary to the State's premise, *Schochet* does not require the State to prove additional facts. What *Schochet* holds is that the statute was not intended to apply to, and therefore does not criminalize, consensual heterosexual conduct in private between competent adults. The holding in *Schochet* is inapposite to any issue in the case *sub judice.*"

The Court of Special Appeals concluded that, because

"the trial court's instructions, as well as the State's closing argument, made it clear that fellatio was the sexual act alleged under both the fourth degree sexual offense charge and the [§ 554] charge ..., under the facts of this case appellant's conviction and sentence under § 554 ... merged into his conviction and sentence for the greater offense, fourth degree sexual offense under § 464C." 86 Md.App. at 84, 585 A.2d at 279.

The State filed in this Court a petition for a writ of certiorari, challenging the Court of Special Appeals' merger holding. The defendant also filed a petition, challenging the affirmance of his conviction and sentence under § 464C(a)(2).

In its certiorari petition, the State again perceived the issue in terms of the proper application of the required evidence test, and it presented a single argument, namely that "the Court of Special Appeals improperly applied the required evidence test" (State's petition at 4). As in the Court of Special Appeals, the State argued that § 554 contained an element not contained in § 464C(a)(2), and that, for this reason, the former did not merge into the latter.

The State's theory as to why § 554 contained a distinct element, however, differed sharply from the theory which it had presented to the Court of Special Appeals. In this Court, the State agreed with the Court of Special Appeals that the elements of § 554 did not include a showing that the sexual act did not fall outside the scope of the statute as construed in

*Schochet v. State, supra.* (State's petition at 5, n. 2). The State contended, however, that § 554 is not a multi-purpose statute, that it does not have alternative elements, and that "[i]t outlaws one thing—unnatural or perverted sexual practices" (*id.* at 4). According to the State, the single element of § 554, namely "unnatural or perverted sexual practices," encompasses "a broader range of conduct than that" proscribed by the "alternative" elements of § 464C and set forth in the definition of "sexual act" in § 461(e) (*ibid.,* State's brief in this Court at 5–6). The State maintained that the determination of the particular sexual practice, and whether it involved another person or an animal, "is not a determination of which purpose in a multi-purpose statute is involved. Rather, it is an analysis of the actual evidence introduced in the case—an analysis not appropriate to a 'required evidence' merger analysis" (State's petition at 4–5). The State argued that, since § 554 contains the single distinct element of an "unnatural or perverted sexual practice," it has an element not contained in the § 464C(a)(2) offense and therefore does not merge into the § 464C(a)(2) offense under the required evidence test. In the State's view, the Court of Special Appeals "misinterpret[ed]" this Court's opinions dealing with "multi-purpose" statutes (*id.* at 4).[10]

We granted the State's petition for a writ of certiorari and denied the defendant's petition. Our order granting the State's petition did not raise any additional issues. *See* Maryland Rule 8–131(b).

## III.

█ As discussed earlier, when applying the required evidence test to a multi-purpose criminal offense, *i.e.,* an offense containing alternative elements, a court must examine the

---

10. No federal constitutional issue was raised in the State's petition. The only federal case cited in the State's petition was *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), cited by the State in a footnote which was designed to show that the *Grady* case had no application to the merger issue in the present case. *Grady v. Corbin* was recently overruled by *United States v. Dixon, supra.*

element or elements relevant to the case before it. The State agrees that a fourth degree sexual offense under § 464C is a multi-purpose statute which can be committed in alternative ways. *See Nightingale v. State, supra,* 312 Md. at 706, 542 A.2d at 376; *State v. Boozer,* 304 Md. 98, 497 A.2d 1129 (1985). *Cf. Biggus v. State, supra,* 323 Md. at 349, 593 A.2d at 1065 (holding that a third degree sexual offense under § 464B is an "offense which can be committed in alternative ways").

The relevant elements of the fourth degree sexual offense charged in this case are found in §§ 464C(a)(2) and 461(e). Section 464C(a)(2) provides that a person is guilty of a fourth degree sexual offense if that person engages "[i]n a sexual act with another person who is 14 or 15 years of age and the person performing the sexual act is four or more years older than the other person." Section 461(e) states that " 'sexual act' means ... fellatio ... but does not include vaginal intercourse." Consequently, the elements of the fourth degree sexual offense charged in this case are (1) the performance of fellatio (2) with a 14 or 15 year old and (3) the performer is four or more years older than 14 or 15.

The second and third of the above-listed elements of the § 464C(a)(2) fourth degree sexual offense, relating to the ages of those involved, are clearly not elements of the offense proscribed by § 554. Thus, the § 464C fourth degree sexual offense charged in this case has distinct elements not found in § 554.

Section 554 prohibits a person from "[1] taking into his or her mouth the sexual organ of any other person or [2] animal, or [3] ... placing his or her sexual organ in the mouth of any other person or [4] animal or [5] ... committing any other unnatural or perverted sexual practice with any other person or [6] animal...." Assuming for present purposes that the terms "unnatural" and "perverted" were not each intended to encompass conduct distinct from the other, the statute prohibits three categories of conduct with other persons and the same three categories of conduct with animals. The plain language of the statute prohibits a person from

performing fellatio or cunnilingus, prohibits a person from having fellatio or cunnilingus performed upon him or her, and prohibits other unnatural or perverted sexual practices. As to the last category, the rule of *ejusdem generis* has been held inapplicable, and the phrase "unnatural or perverted sexual practice" encompasses more than acts of an oral nature. *Blake v. State,* 210 Md. 459, 462, 124 A.2d 273, 274 (1956).

The statutory language clearly requires rejection of the State's argument that the § 554 offense contains a single element, namely engaging in unnatural or perverted sexual practices, and that performing fellatio is simply the "actual evidence" of the offense. The statute is just not written in such terms. The first prohibition in the language of the statute itself is "taking into his or her mouth the sexual organ of any other person...." This is a statutory prohibition—an element to be proven. It is not simply an evidentiary matter. The State in this case was required to establish, and did establish, that this was precisely the conduct in which the defendant had engaged. Moreover, § 554 is obviously a multi-purpose statute. The use of the conjunction "or" in the statute makes it clear that each category of prohibited conduct represents an alternative manner of committing the offense. The phrase "or other unnatural or perverted sexual practice" simply represents the final category of conduct proscribed by the statute.[11]

We have pointed out that, when the statutory language itself "embrac[es] different matters in the disjunctive," the statute is "multi-purpose" and "a court in applying the re-

---

11. In arguing that the statute contains the single element of "unnatural or perverted sexual practices," the State may be placing some reliance on the fact that this is the bold type caption or heading of § 554 in Art. 27 of the Annotated Code of Maryland. This caption or heading, however, is not part of the statute and was probably inserted by the editors of the Code or the editorial consultant. *See* Maryland Code (1957, 1990 Repl.Vol.), Art. 1, § 18; *City of Baltimore v. Hooper,* 312 Md. 378, 388, 539 A.2d 1130, 1135 (1988). Neither Ch. 616 of the Acts of 1916, which originally enacted § 554, nor Ch. 371 of the Acts of 1991, which re-enacted § 554 without change, contained this caption or heading.

quired evidence test must examine 'the alternative elements relevant to the case at hand.'" *State v. Ferrell, supra,* 313 Md. at 298, 545 A.2d at 656, quoting *Nightingale v. State, supra,* 312 Md. at 705, 542 A.2d at 376. The language of § 554 itself embraces different matters in the disjunctive, and thus, under our cases, § 554 is plainly a multi-purpose statute. *See also, e.g., Thomas v. State, supra,* 277 Md. at 268–269, 353 A.2d at 247–248 (pointing out that "the provisions of [the statute] are in the disjunctive. The offense can be established either by showing" one type of proscribed conduct or the other).

■ The statutory element of § 554 relevant to this case is the defendant's "taking into his ... mouth the sexual organ of any other person...." This element would appear to be fully encompassed by the elements of the § 464C(a)(2) offense, because a forbidden "sexual act" under § 464C(a)(2) is statutorily defined as including fellatio and cunnilingus. The § 554 offense has no additional elements. A person cannot commit a fourth degree sexual offense under § 464C, as charged in this case, without also violating § 554. Consequently, we reject the State's argument that the § 554 offense of which the defendant was convicted contained an element distinct from the elements of the § 464C(a)(2) offense of which he was convicted. The State has not established any error in the Court of Special Appeals' holding that the § 554 offense is an included offense and, for sentencing purposes, merges into the § 464C(a)(2) offense.

## IV.

The above discussion is dispositive of the position advanced by the State. The State has not in this case proposed any other theory which would preclude a merger of the § 554 offense into the § 464C(a)(2) offense. Moreover, the State has not argued or even intimated that, if the § 554 offense is included in the § 464C(a)(2) offense under the required evidence test, the sentence imposed upon the § 554 conviction can nevertheless stand.

■■■■■■■ The two dissenting opinions, however, advance three arguments, not made by the State, as to why the § 554 offense does not merge into the § 464C(a)(2) offense.[12] *First,* Judge McAuliffe, while agreeing that the two offenses are the same under the required evidence test and thus merge, asserts that the Fifth Amendment's Double Jeopardy Clause does not preclude merging the § 464C(a)(2) offense into the § 554 offense. *Second,* Judge Chasanow argues that the two offenses do not merge under the required evidence test because the § 554 offense charged in this case requires proof of something more than fellatio. *Third,* Judge Chasanow's dissenting opinion alternatively takes the position that, even if the § 554 offense is included within the § 464C(a)(2) offense under the required evidence test, multiple sentences here are permissible under cases such as *Whack v. State, supra,* 288 Md. 137, 416 A.2d 265.

## A.

Judge McAuliffe in dissent agrees that the two offenses charged in this case are the same under the required evidence

---

12. Judge Chasanow's dissent, in footnote 2, asserts that, in affirming the trial judge, this "Court should not be limited solely to the reasons argued by the State," citing *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980). This assertion would be accurate with respect to a case not decided by an intermediate appellate court. In a direct appeal, an appellate court will affirm the trial court's decision on a ground adequately supported by the record although the ground was not relied upon by the trial court or the parties. *See, e.g., Offutt v. Montgomery Co. Bd. of Ed.,* 285 Md. 557, 563 n. 3, 404 A.2d 281, 285 n. 3 (1979); *Robeson v. State, supra.* Nevertheless, as pointed out in both the *Offutt* and the *Robeson* opinions, there is a distinction between a direct appeal and a second discretionary appeal with regard to the principle relied on by Judge Chasanow. In a case before us which has been decided by the Court of Special Appeals, the principle that a trial court will be affirmed for any reason adequately shown by the record is applicable only if the ground was presented in a petition for a writ of certiorari, in a cross-petition, or in this Court's order granting certiorari. *See, e.g., Robeson v. State, supra,* 285 Md. at 502, 403 A.2d at 1223–1224; *Maryland State Police v. Zeigler,* 330 Md. 540, 562–563, 625 A.2d 914, 925 (1993); Maryland Rule 8–131(b). None of the three arguments made in the dissenting opinions was raised in the State's petition for a writ of certiorari or in our order granting the petition.

test and that multiple sentences are not permissible. Furthermore, he agrees that the § 464C(a)(2) offense contains the distinct element and that, based on the elements, the § 554 offense is included within the § 464C(a)(2) offense. Nonetheless, Judge McAuliffe would merge the § 464C(a)(2) conviction into the included § 554 conviction, asserting that "[t]he Fifth Amendment . . . does not require that the conviction left standing be of the offense having the greatest number of elements." No decision by the United States Supreme Court, by this Court, or by any other court, is cited in support of this proposition.

Although we are not aware of any Supreme Court authority upholding the constitutionality of the merger result advocated by Judge McAuliffe, for purposes of this case we can assume arguendo that the Double Jeopardy Clause of the Fifth Amendment would not, under the circumstances here, invalidate a Maryland law providing for the merger of the § 464C(a)(2) conviction into the § 554 conviction. No such federal constitutional issue, however, is before us in this case. There is no Maryland law authorizing the merger of the § 464C(a)(2) conviction into the § 554 conviction. On the contrary, where two offenses are the same under the required evidence test, settled Maryland law prohibits the merger of the offense containing the greater elements into the included offense. The matter before us in this case, and particularly any question of which offense should merge for sentencing purposes, is entirely governed by Maryland merger law.[13]

---

13. In addition, the State in its certiorari petition presented no federal constitutional question and neither relied on nor even cited any United States Supreme Court cases involving the merger of offenses or the permissibility of particular punishments. Moreover, this Court has rendered a multitude of opinions dealing with every aspect of Maryland law concerning the merger of offenses. Most of our cases concerning the merger of offenses for sentencing purposes have been based upon Maryland law and not upon the Double Jeopardy Clause of the Fifth Amendment. *See, e.g., Eldridge v. State,* 329 Md. 307, 316–320, 619 A.2d 531, 535–538 (1993); *Biggus v. State, supra,* 323 Md. at 350–357, 593 A.2d at 1065–1069; *Williams v. State,* 323 Md. 312, 316–324, 593 A.2d 671, 673–676 (1991); *Snowden v. State,* 321 Md. 612, 617–619,

 As indicated above, the position taken in Judge McAuliffe's dissenting opinion is directly contrary to established Maryland merger law; it would require this Court to overrule many of its prior opinions. This Court has consistently held, without exception, that where there is merger based on the required evidence test, the included offense merges into the offense with the distinct element, regardless of the maximum sentence which each offense carries. No decision by this Court furnishes support for merging, when two offenses are the same under the required evidence test, the offense with a distinct element into the included offense.

Thus, in *Flannigan v. State, supra,* 232 Md. 13, 191 A.2d 591, the defendant was convicted of obtaining $57.00 by a bad check with intent to defraud in violation of then Maryland Code (1957, 1967 Repl.Vol.), Art. 27, § 142. He was also convicted, under a separate count, of obtaining money by false pretenses. Both convictions were based on the same acts. The maximum authorized sentence for the § 142 conviction was imprisonment for 18 months. The authorized sentence for the false pretenses conviction was, under then Art. 27, § 140, imprisonment "for not less than two years nor more than ten years." The trial court imposed a sentence of two years imprisonment which was authorized for the false pre-

---

583 A.2d 1056, 1059–1060 (1991); *Monoker v. State,* 321 Md. 214, 219–222, 582 A.2d 525, 527–529 (1990); *Middleton v. State, supra,* 318 Md. at 756, 760–761, 569 A.2d at 1279, 1281; *White v. State, supra,* 318 Md. at 742, 745–748, 569 A.2d at 1272–1273; *Lewis v. State,* 285 Md. 705, 722–723, 404 A.2d 1073 (1979); *Johnson v. State,* 283 Md. 196, 203–204, 388 A.2d 926, 930 (1978); *Flannigan v. State,* 232 Md. 13, 19, 191 A.2d 591, 593–594 (1963); *Veney v. State, supra,* 227 Md. at 613–614, 177 A.2d at 885–886; *Young v. State,* 220 Md. 95, 100–101, 151 A.2d 140, 143–144 (1959), *cert. denied,* 363 U.S. 853, 80 S.Ct. 1634, 4 L.Ed.2d 1735 (1960). Furthermore, this Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground. *See, e.g., Mack v. Mack,* 329 Md. 188, 211, 618 A.2d 744, 756 (1993); *Dabrowski v. Dondalski,* 320 Md. 392, 395, 578 A.2d 211, 213 (1990); *Brittingham v. State,* 306 Md. 654, 660, 511 A.2d 45 (1986); *Mercy Hosp. v. Jackson,* 306 Md. 556, 565, 510 A.2d 562, 566 (1986); *Avara v. Baltimore News American,* 292 Md. 543, 554 n. 7, 440 A.2d 368, 373 n. 7 (1982); *Temoney v. State,* 290 Md. 251, 259 n. 6, 429 A.2d 1018, 1022 n. 6 (1981).

tenses conviction. On appeal, this Court remanded, ordering that the judgment under the false pretenses count be stricken out and that sentence be imposed on the § 142 conviction not to exceed 18 months imprisonment. In holding that the false pretenses conviction merged into the § 142 conviction under the required evidence test, and that the prison sentence could not exceed the 18–month maximum authorized by § 142, this Court stated (232 Md. at 19, 191 A.2d at 593–594):

"We recently had occasion to state the circumstances under which one criminal act may violate two statutes. *Veney v. State,* 227 Md. 608, 177 A.2d 883. We quoted from Judge Soper's opinion in *Aaronson v. United States,* 175 F.2d 41 (C.A., 4 [1949] ), as follows: 'A single transaction may be an offense against two statutes if each statute requires proof of a fact which the other does not.' Applying that test to the instant case, it is readily observed that a conviction under § 142 requires 'proof of a fact' (a worthless check) that § 140 does not necessarily require. However, a conviction under § 140, when a bad check is involved, does not require 'proof of a fact' that is not essential to sustain a conviction under § 142. Hence, we hold that appellant should not have been convicted on the fourth count.

\* \* \* \* \* \*

"We shall, therefore, remand the case for the imposition of a proper sentence under the conviction on the third count."

The Court in *Johnson v. State, supra,* 283 Md. at 203–204, 388 A.2d at 930, again held that, where two offenses are deemed the same under the required evidence test, the included offense merges into the offense having a distinct element regardless of the maximum authorized sentence for each offense. In that case, the defendant Johnson, an employee of the State Department of Social Services, devised and carried out a scheme under which he defrauded the State out of $33,000.00 over a period of 2½ years by preparing and submitting false applications for welfare payments which resulted in the Department's issuing checks to various fictitious persons. Johnson or an accomplice then cashed the checks. Johnson

was convicted of obtaining money by false pretenses and of welfare fraud in violation of Art. 27, § 230A. As previously indicated, the maximum penalty for a conviction of obtaining money by false pretenses was 10 years imprisonment. The maximum penalty for welfare fraud under § 230A was, and still is, three years imprisonment.

The trial court in *Johnson* sentenced the defendant to four years imprisonment on the false pretenses convictions and sentenced him to concurrent terms on the welfare fraud convictions. The Court of Special Appeals, taking the same view that Judge McAuliffe now takes, held that the welfare fraud convictions merged into the false pretenses convictions and vacated the judgments on the welfare fraud counts. This Court, however, in an opinion by Judge Marvin Smith, held that, under the required evidence test, false pretenses was an included offense within welfare fraud, that the convictions for false pretenses merged into the convictions for welfare fraud, and that "[t]he sentence must be under § 230A, which provides the lesser penalty. Thus, the Court of Special Appeals erred." 283 Md. at 204, 388 A.2d at 930. This Court in *Johnson* also specifically rejected the same position which is taken by Judge McAuliffe today, saying (*ibid.*):

> "There is at least the suggestion here that because false pretenses carries a potential punishment of 10 years imprisonment while the maximum imprisonment for welfare fraud is three years that this in some fashion makes false pretenses the greater crime into which welfare fraud would merge. This concept was rejected by the Court in *Flannigan v. State*, 232 Md. 13, 19, 191 A.2d 591 (1963)."

*See also, e.g., Nightingale v. State, supra,* 312 Md. 699, 708, 542 A.2d 373, 377 (holds, among other things, that convictions for second degree sexual offenses under Art. 27, § 464A, carrying a maximum sentence of 20 years, merged under the required evidence test into convictions for sexual child abuse under Art. 27, § 35A, carrying a maximum sentence of 15 years; the Court ordered, *inter alia*, that a 20–year sentence imposed for second degree sexual offense be vacated); *State v. Jenkins, supra,* 307 Md. at 521, 515 A.2d at 475; *Hardy v.*

*State,* 301 Md. 124, 134, 482 A.2d 474, 480 (1984) ("in Maryland a defendant charged with a greater offense (that carries a lighter penalty) and a lesser included offense (that carries a heavier penalty) is only subject to the maximum penalty of the greater offence upon conviction"); *Gerald v. State,* 299 Md. 138, 145–146, 472 A.2d 977, 981 (1984); *Simms v. State,* 288 Md. 712, 723–725, 421 A.2d 957, 963–964 (1980).

Consequently, Maryland law clearly requires that the § 554 conviction merge into the § 464C(a)(2) conviction.

### B.

Judge Chasanow, in his dissenting opinion, contends that the oral sex act proscribed by § 554 "requires more than" fellatio which is an element of the § 464C(a)(2) offense and that, for this reason, the § 554 offense contains a distinct element.

The notion that the § 554 offense requires the State to show more than fellatio is apparently based upon § 554's use of the phrase *"into* his or her mouth," whereas fellatio requires only the *"application"* of a person's mouth to a male sexual organ. No Maryland case, to the best of our knowledge, draws the distinction suggested by Judge Chasanow's dissent. On the contrary, our cases have treated the prohibitions of § 554 relating to oral sex acts with other persons the same as prohibitions against fellatio and cunnilingus. *See, e.g., Schochet v. State, supra,* 320 Md. at 718, 732, 580 A.2d at 178, 185 (referring to the defendant's being charged with "fellatio, in violation of Art. 27, § 554," and referring to the fact that "cases in this Court have upheld convictions under § 554 based on engaging or attempting to engage in fellatio"); *Neville v. State,* 290 Md. 364, 377, 380–381, 430 A.2d 570, 576–577, 578 (1981) (equating the § 554 charge there involved with "fellatio," "oral sodomy," and "oral sex").

Judge Chasanow's dissenting opinion, by focussing upon the word "into" in isolation, interprets § 554's oral sex prohibitions too narrowly. Because § 554 refers to "the sexual organ of any other person" and prohibits "placing . . . *her* sexual

organ *into* the mouth of another person" (emphasis added), it also encompasses cunnilingus. Because of this, the statute obviously requires no more than the application of one person's mouth, lips or tongue to another person's sexual organ.

Judge Chasanow's dissent attempts to find support for its narrow construction of § 554's oral sex prohibitions in *Thomas v. State,* 301 Md. 294, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985). In *Thomas,* the appellant, who forced a woman to kiss his penis, was convicted of violating § 464(a) of Art. 27 which provides that "[a] person is guilty of a sexual offense in the first degree if the person engages in a sexual act . . ." under one of four aggravating circumstances. As previously discussed, "sexual act" as defined in Art. 27, § 461(e), includes "fellatio." The word "fellatio" itself, however, is undefined. The appellant in *Thomas* contended that fellatio required proof of penetration of the mouth. This Court, reasoning that the legislature intended "to give 'fellatio' its common, ordinary and well-accepted meaning," held that "fellatio, within the meaning of § 461(e), encompasses the oral contact with the male sex organ involved in this case." *Thomas,* 301 Md. at 32, 483 A.2d at 20. Section 554 was not at issue in the *Thomas* case, nor were the requirements of § 554 discussed therein. While the Court in *Thomas* pointed out that the appellant in that case was not charged under § 554, nothing in this Court's opinion suggested that § 554's oral sex prohibitions were more narrow than fellatio or cunnilingus.

## C.

Judge Chasanow's dissent alternatively argues that, under this Court's decisions, multiple sentences under both § 464C(a)(2) and § 554 are permissible in the case at bar. Reliance is placed upon *Whack v. State, supra,* 288 Md. 137, 416 A.2d 265, and *Frazier v. State,* 318 Md. 597, 612–615, 569 A.2d 684, 692–693 (1990), as well as language from the opinion in *Randall Book Corp. v. State, supra,* 316 Md. 315, 558 A.2d

715.[14] Judge Chasanow's dissent asserts that the issue is simply a matter of ascertaining legislative intent, that in the context of multiple punishments in a single prosecution, the required evidence test functions strictly as an aid in determining the Legislature's intent, and that the absence of expressed legislative intent is not dispositive. His dissent concludes that the Legislature intended that the § 464C(a)(2) offense be treated as a "particular aggravating circumstance" designed to impose punishment "cumulative to the punishment existing under § 554."

The position taken by Judge Chasanow cannot be squared with our cases or with the language of § 464C.

 Under this Court's decisions, the required evidence test is not simply another rule of statutory construction. Instead, it is a long-standing rule of law to determine whether one offense is included within another when both are based on the same act or acts. *See, Hagans v. State,* 316 Md. 429, 445–

---

**14.** Judge Chasanow's dissent also discusses the Double Jeopardy Clause of the Fifth Amendment, along with several United States Supreme Court cases, and points out that the Double Jeopardy Clause does not necessarily preclude multiple punishments for the same act, under two statutory offenses which are deemed to be the same offense under the required evidence test, and that the matter of legislative intent is particularly important in determining the constitutional permissibility of multiple punishments. Judge Chasanow's dissent, however, later acknowledges that these principles are essentially reflected in numerous Maryland cases dealing with the merger of offenses. In fact, prior to any of the Supreme Court decisions on this subject relied on by Judge Chasanow's dissent, this Court in *Newton v. State,* 280 Md. 260, 274 n. 4, 373 A.2d 262, 269 n. 4 (1977), pointed out that multiple punishments under two different statutory provisions, deemed to be the same offense under the required evidence test, could in some circumstances be imposed for the same act where the Legislature expressly indicated such an intent. *See also, e.g., Whack v. State,* 288 Md. 137, 143, 416 A.2d 265, 268 (1980), *appeal dismissed and cert. denied,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981) ("The imposition of multiple punishment ... is of ten particularly dependent upon the intent of the Legislature").

Consequently, we do not suggest that the result in the present case would be any different under the Supreme Court cases cited by Judge Chasanow's dissent. Nevertheless, for the reasons set forth in Part IV A, we base our holding in this case entirely upon Maryland common law merger principles.

453, 559 A.2d 792, 799–804 (1989). The notion that the required evidence test functions only as rule of statutory construction, in the context of multiple punishments, is refuted by the many cases holding that the test is fully applicable to determine merger issues involving common law crimes, including common law crimes for which there is no statutorily prescribed penalty. *See, e.g., In re Montrail, supra,* 325 Md. at 532, 601 A.2d at 1104 ("The required evidence test 'applies to both common law and statutory offenses' "); *Biggus v. State, supra,* 323 Md. at 350–352, 593 A.2d at 1065–1066 (analyzing common law battery in the context of merger under the required evidence test); *Williams v. State, supra,* 323 Md. at 317–320, 593 A.2d at 673–675 (pointing out that the required evidence test applies to merger issues involving common law offenses, and discussing attempted murder in the context of the test); *Snowden v. State, supra,* 321 Md. at 617–619, 583 A.2d at 1059–1060 (determining whether common law assault and/or common law battery merged into common law robbery under the required evidence test); *Monoker v. State, supra,* 321 Md. at 217–222, 582 A.2d at 526–529 (deciding whether the common law offense of solicitation merged into the common law offense of conspiracy under the required evidence test); *White v. State, supra,* 318 Md. at 746, 569 A.2d at 1274 (distinguishing between the required evidence test, which is a rule of law applicable to common law and statutory offenses, and the rule of lenity, which is a rule of statutory construction with more limited applicability because "[o]bviously a rule of statutory construction has little relevance to an offense not created by Maryland statute"); *Lewis v. State,* 285 Md. 705, 722–723, 404 A.2d 1073, 1082–1083 (1979) (holds that, under the required evidence test, solicitation of murder merges into being an accessory before the fact to the same murder); *State v. Frye,* 283 Md. 709, 393 A.2d 1372 (1978) (holds that kidnapping and robbery merge into felony murder under the required evidence test); *Newton v. State, supra,* 280 Md. 260, 373 A.2d 262 (the required evidence test mandates that attempted robbery merge into felony murder); *Stewart v. Warden,* 243 Md. 697, 699, 221 A.2d 709, 710 (1966) (holds that

common law assault and robbery merge into armed robbery); *Green v. State,* 243 Md. 75, 80–81, 220 A.2d 131, 135 (1966) (common law assault merges into common law rape under the required evidence test); *Tucker v. State,* 237 Md. 422, 425, 206 A.2d 691, 694 (1965) (common law larceny merges into the statutory offense of breaking and stealing); *Fabian v. State,* 235 Md. 306, 314, 201 A.2d 511, 515, *cert. denied,* 379 U.S. 869, 85 S.Ct. 135, 13 L.Ed.2d 72 (1964) (same); *Flannigan v. State, supra,* 232 Md. at 19, 191 A.2d at 593–594 (false pretenses); *Marks v. State,* 230 Md. 108, 112–113, 185 A.2d 909, 911–912 (1962) (common law assault); *Veney v. State,* 227 Md. 608, 614, 177 A.2d 883, 885–886 (1962) (common law robbery); *Young v. State,* 220 Md. 95, 100–101, 151 A.2d 140, 143–144 (1959), *cert. denied,* 363 U.S. 853, 80 S.Ct. 1634, 4 L.Ed.2d 1735 (1960) (common law larceny).

In the above-cited cases decided prior to *Newton v. State, supra,* 280 Md. at 274 n. 4, 373 A.2d at 269 n. 4, this Court did not appear to recognize any exception to the rule that multiple punishments were prohibited when a defendant, based on the same act or acts, was convicted of both a greater and an included offense. The Court in such cases simply vacated the sentence on the included offense, taking the position that multiple punishments were forbidden as a matter of law.

In *Newton,* although holding that the included offense involved in that case merged into the greater offense, this Court for the first time noted as follows (280 Md. at 274 n. 4, 373 A.2d at 269 n. 4, emphasis added):

"[T]he legislature may indicate an *express intent* to punish certain conduct more severely if particular aggravating circumstances are present by imposing punishment under two separate statutory offenses which otherwise would be deemed the same under the required evidence test."

Nevertheless, our opinions since *Newton* have recognized that the above-noted exception is very limited, and that, when two offenses, based on the same act or acts, are deemed to be the same under the required evidence test, there is merger as a matter of course. *See, e.g., In re Montrail M., supra,* 325 Md.

at 533, 601 A.2d at 1104 (the two offenses "are deemed to be the same under the required evidence test, and merger follows as a matter of course"); *Williams v. State, supra,* 323 Md. at 318, 593 A.2d at 673 ("Where two offenses are based on the same act or acts, and the two offenses are deemed to be the same under the required evidence test, merger follows as a matter of course"); *Snowden v. State, supra,* 321 Md. at 617, 583 A.2d at 1059; *Monoker v. State, supra,* 321 Md. at 219–220, 582 A.2d at 527–528; *Middleton v. State, supra,* 318 Md. at 757–758, 569 A.2d at 1279–1280.

Moreover, our cases have continued to point out that, when two offenses based on the same act or acts are deemed the same under the required evidence test, multiple sentences are allowable only in some circumstances and only where the Legislature expressly or specifically or very clearly sets forth its intent that there be multiple sentences. For example, Judge Chasanow's dissent relies on language from *Randall Book Corp v. State, supra,* 316 Md. at 324, 558 A.2d at 720, that, with regard to multiple punishments, "a critical question is one of legislative intent" and that the required evidence test "is not dispositive." But, in the very same paragraph from the *Randall Book* opinion, we explained why the required evidence test is not dispositive. Judge McAuliffe there stated for the Court (316 Md. at 323, 558 A.2d at 719–720, emphasis added):

> "The [required evidence] rule does not provide the final answer in cases involving multiple punishment because, *when specifically authorized* by the legislature, cumulative sentences for the same offense may under some circumstances be imposed after a single trial."

Consequently, specific or express authorization by the Legislature is a pre-condition for multiple punishments when two offenses are deemed the same under the required evidence test.[15] *See, also, Williams v. State, supra,* 323 Md. at 318, 593

---

15. Even the Supreme Court cases cited in Judge Chasanow's dissent recognize the need for absolutely clear legislative intent to authorize multiple punishments when the multiple offenses are deemed to be the

A.2d at 673–674; *Frazier v. State, supra,* 318 Md. at 612–615, 569 A.2d at 692–693; *Whack v. State, supra,* 288 Md. at 143, 416 A.2d at 268.[16]

---

same under the required evidence test. Thus, in *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543–544 (1983), the Supreme Court held that multiple punishments did not violate the Fifth Amendment's Double Jeopardy Clause because of "clearly expressed legislative intent" and because "[h]ere, the Missouri Legislature has made its intent crystal clear."

In *Whalen v. United States,* 445 U.S. 684, 695, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715, 725–726 (1980), the Court struck down multiple sentences because Congressional intent to authorize such sentences was not "clearly" expressed. The Court in *Whalen* rejected the same type of statutory construction arguments which Judge Chasanow's dissent advances in the present case. The offenses in *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), were not the same under the required evidence test, and, for this reason, cumulative sentences were permitted. In *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the offenses also were not the same under the required evidence test.

Finally, in its most recent expression on the matter, *United States v. Dixon, supra,* 113 S.Ct. at 2856, 125 L.Ed.2d at 568, the Supreme Court stated as follows: "In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." There was not even a mention of the "expressed legislative intent" exception in the opinion of the Court. This reinforces the principle that where two offenses are deemed the same under the required evidence test, merger follows as a matter of course.

**16.** In light of these cases, if the required evidence test, as applied in the context of multiple punishments under statutory offenses, is viewed as a rule of statutory construction, it would clearly not be an ordinary rule of statutory construction to be applied along with various other rules and criteria. Instead, it would be a rule which, in *all* cases falling within its scope, strictly presumes that the legislative body did not intend multiple punishments unless the pertinent statutes expressly or specifically authorize multiple punishments. To view the required evidence test as simply another rule of statutory construction, as Judge Chasanow's dissent does, renders the test indistinguishable from the rule of lenity which is applicable when offenses are not deemed the same under the required evidence test. Nevertheless, our cases, as well as the Supreme Court cases cited by Judge Chasanow, draw a clear distinction between the required evidence test and the rule of lenity. *See, e.g., White v. State, supra,* 318 Md. at 742–744, 744–748, 569 A.2d at 1272–1273, 1273–1275. *See also, e.g., Albernaz v. United States, supra,* 450 U.S. at 337–340, 342–343, 101 S.Ct. at 1141–1143, 1144, 67 L.Ed.2d at 280–282, 283–284.

The exception noted in *Newton, Randall Book,* and the other cases cited above, has been found applicable by this Court only in one circumstance, namely where one of the offenses was proscribed by the Handgun Act of 1972, Ch. 13 of the Acts of 1972, codified as Art. 27, §§ 36B–36F. The only two cases in which we have applied the exception, *Whack v. State, supra,* and *Frazier v. State, supra,* involved convictions under the 1972 handgun statute.

The defendant in the *Whack* case was convicted of and received separate sentences for armed robbery under Art. 27, § 488, and use of a handgun in the commission of a felony under Art. 27, § 36B(d), based upon a single act of robbery with a handgun. Relying upon the language in *Newton, supra,* 280 Md. at 274 n. 4, 373 A.2d at 269 n. 4, that multiple sentences may in some circumstances be allowable for two offenses, which are deemed the same under the required evidence test, if there is "an express intent to punish certain conduct more severely if particular aggravating circumstances are present," we upheld the multiple sentences in *Whack.* We initially pointed out in *Whack* that the General Assembly, in the Handgun Act of 1972, "specifically addressed the matter of other statutes" encompassing conduct that was also an offense under the Handgun Act, and "specifically amended or superseded those other statutes" where "it desired no duplication," 288 Md. at 145, 146, 416 A.2d at 269–270. More importantly, in *Whack* we relied on the language in the Handgun Act, Art. 27, § 36B(d), where the General Assembly stated that the offense of using a handgun in the commission of a felony or a misdemeanor constituting a crime of violence shall be a "separate" offense and *expressly* stated that the sentence under the Handgun Act shall be "in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor," 288 Md. at 147, 416 A.2d at 270.

In *Frazier v. State, supra,* 318 Md. at 612–615, 569 A.2d at 692–693, we held that the express intent of the General Assembly in the Handgun Act of 1972 allowed the imposition of multiple punishments for two offenses deemed to be the same under the required evidence test, namely wearing, carry-

ing and transporting a handgun in violation of Art. 27, § 36B(b) and possession of a revolver after being convicted of a crime of violence in violation of Art. 27, § 445(c). The *Frazier* opinion relied entirely upon the *Whack* opinion and the language of the handgun statute set forth in *Whack*.

These decisions under the Handgun Act of 1972 furnish no support for the argument that the present case falls within the limited exception to the principle that merger follows as a matter of course when two offenses, based on the same act or acts, are the same under the required evidence test. The statutory language of the Handgun Act itself specifically addressed the matter of duplication of offenses and expressly provided for cumulative sentences under particular circumstances. The language of the fourth degree sexual offense statute, Art. 27, § 464C, does not "specifically" or "expressly" or "clearly" address the matter or provide for cumulative sentences. In fact, neither the language of § 464C, nor the language of Ch. 573 of the Acts of 1976 which enacted the new sexual offenses subheading to Art. 27 of the Code (§§ 461–464E), deals with the matter of multiple punishments.

Judge Chasanow's dissent takes the position that § 464C was intended to be a penalty enhancement statute similar to the § 36B(d) provision of the Handgun Act involved in the *Whack* case. There is, however, little similarity. Section 36B(d), which provides an enhanced penalty for using a handgun in the commission of a felony or a misdemeanor constituting a crime of violence, expressly, in the statutory language, delineated the other crimes which would trigger the enhanced penalty under § 36B(d). The language of § 464C, on the other hand, makes no reference to any other crimes. The statutory language is not in terms of penalty enhancement. Moreover, our cases have not viewed the sexual offense statutes as penalty enhancement provisions. When the same conduct has been an offense under either § 464A or 464B or 464C, and has also constituted another offense, with both being deemed the same under the required evidence test, we

have not permitted multiple punishments. *See, e.g., Biggus v. State, supra,* 323 Md. at 350–352, 593 A.2d at 1065–1066; *Nightingale v. State, supra,* 312 Md. 699, 542 A.2d 373.

As shown by the language of the Handgun Act of 1972, as well as the language of other statutes, the General Assembly is well aware of the principles of merger under Maryland law and knows how to specifically or expressly provide for multiple punishments in situations where there would otherwise be a merger.[17] In § 464C, the General Assembly most certainly did not specifically or expressly authorize multiple punishments. Consequently, the present case does not fall within the exception noted in *Newton* and applied in *Whack.*

Judge Chasanow's dissent finds "clear" legislative intent that the General Assembly intended multiple punishments under both § 464C and § 554 by relying on the legislative history of § 464C. This history shows that the 1976 Senate bill providing for the new sexual offense statutes, Senate Bill 358, as it originally passed the Senate, would have repealed § 554 and § 553 (punishing sodomy with a ten-year maximum prison sentence), but that, prior to final enactment, the provision repealing §§ 554 and 553 was deleted. The legislative history of § 464C does not provide any evidence of legislative

---

17. *See, e.g.,* Art. 27, § 35A, providing criminal penalties for, *inter alia,* sexual child abuse, and stating in subsection (b)(3) that "[t]he sentence imposed under this section may be imposed separate from and consecutive to or concurrent with a sentence for any offense based upon the act or acts establishing the abuse." This subsection, enacted by Ch. 604 of the Acts of 1990, was designed to change the result under circumstances like those involved in *Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988). In *Nightingale* this Court held that the several sexual offenses proscribed by §§ 464A, 464B, and 464C, were, under the required evidence test, included within sexual child abuse proscribed by § 35A, when based on the same acts, that, therefore, there was merger, and that multiple punishments were consequently precluded. It is noteworthy that the General Assembly, while dissatisfied on policy grounds with the consequences of the merger holding in *Nightingale,* did not change in any way the basic principles of Maryland merger law applied in *Nightingale.* Instead, and in accordance with the existing principles of Maryland law governing the merger of offenses, the General Assembly specifically and expressly authorized multiple punishments in § 35A.

intent to authorize multiple punishments. We reviewed this legislative history in *Schochet v. State, supra,* 320 Md. at 734–735, 580 A.2d at 185–186. The only discussion in the legislative history of whether or not §§ 554 and 553 should be retained was in the report of the Senate Judicial Proceedings Committee, and the matter of multiple punishments was not mentioned in that report. The Committee's reasons for proposing the deletion of §§ 554 and 553 had nothing to do with multiple punishments. Furthermore, in *Schochet,* we took the position that the likely reasons for retaining §§ 554 and 553 were to encompass conduct not covered by §§ 464, 464A, 464B and 464C.

The language and history of § 464C no more reflects a legislative intent favoring multiple punishments than the language and history of numerous other statutes which have been before this Court in similar cases where we have held that an included offense merges into a greater offense. Permitting multiple punishments in the present case simply cannot be reconciled with our prior cases.

Moreover, the consequences of upholding multiple punishments in the present situation dictate that, if the General Assembly intends multiple punishments, it should specifically or expressly provide for them. For example, since every violation of § 464C(a)(2) is also a violation of § 554 or § 553, adopting Judge Chasanow's view would subject everyone convicted of violating § 464C(a)(2) to a maximum of eleven years imprisonment (one year under 464C(a)(2) and ten years under §§ 554 or 553). Nonetheless, the General Assembly expressly determined that the maximum prison sentence for violating § 464C(a)(2) should be one year. Furthermore, under Judge Chasanow's view, the eleven-year maximum term of imprisonment for the fourth degree sexual offense proscribed by § 464C(a)(2) would exceed the ten-year maximum term for a third degree sexual offense under § 464B. It would also make every § 464C(a)(2) violation a so-called "penitentiary offense" as provided for in §§ 554 or 553.

The dissenting opinion by Judge Chasanow, disregarding the requirement of express or specific legislative intent, presumes that whenever an included offense with a higher maximum penalty would merge into a greater offense with a lower maximum penalty under the required evidence test, the Legislature must have intended to authorize cumulative punishments. To reconcile this notion with our prior cases, Judge Chasanow's opinion, quoting language from *Simms v. State, supra,* 288 Md. at 726, 421 A.2d at 965, suggests that an included offense with a larger maximum penalty should merge into a greater offense with a smaller maximum penalty only when the additional element or elements of the latter offense are mitigating factors or when the lesser offense is a common law offense with no statutory maximum.[18] The quoted language from the *Simms* opinion, relied on by Judge Chasanow, is simply an observation that usually greater offenses represent more heinous crimes but that sometimes the additional element of the greater offense "may have been viewed" by the Legislature as a mitigating factor. *Simms,* 288 Md. at 726, 421 A.2d at 965. This qualified observation from *Simms,* concerning a possible legislative viewpoint under some circumstances, certainly was not intended to, and did not, change Maryland merger law. Moreover, the *Simms* opinion made it clear that the merger and sentencing principles set forth in that opinion were applicable regardless of whether the distinct element of the greater offense is viewed as a mitigating or aggravating factor.

A review of this Court's opinions demonstrates that, where two charged offenses have been deemed the same under the required evidence test, and where neither offense was under

---

18. A strained analysis has given rise to the exceptions crafted by Judge Chasanow. For example, in discussing the decision merging a sexual offense conviction into a conviction for sexual child abuse in *Nightingale v. State, supra,* 312 Md. 699, 542 A.2d 373, he advances the dubious proposition that it is "at least possible that the legislature intended that a sexual offense by a child's parent, custodian or supervisor was at least theoretically slightly less traumatic or severe than, the same sexual offense committed on the child by a stranger." 332 Md. at 442, 631 A.2d at 483.

the Handgun Act of 1972, there has been a merger regardless of whether the distinct element of the greater offense is viewed as an aggravating factor, a mitigating factor, or neither. Whenever this Court has determined that the offenses are the same under the required evidence test and that the Legislature did not expressly or specifically authorize multiple punishments, the included offense has *invariably* been merged into the greater offense, without regard to the maximum penalties of each or the heinousness of the conduct. On the facts of several cases in this Court, where an included offense carrying a longer maximum penalty was merged into a greater offense carrying a shorter maximum penalty, or where the maximum penalty for the included offense was capped by the shorter maximum penalty of a charged greater offense, the defendant's conduct was quite heinous and in no way deserving of mitigation in sentencing. *See, e.g., Biggus v. State, supra,* 323 Md. at 344, 593 A.2d at 1062 (defendant, displaying a "utility knife or razor knife" and a hypodermic needle, forceably committed digital anal penetration upon a 13-year old boy and punched the boy on the head when he tried to leave); *Snowden v. State, supra,* 321 Md. at 614–615, 583 A.2d at 1057–1058 (defendant assaulted and battered the robbery victim by shooting him in the arm with a rifle); *Nightingale v. State, supra,* 312 Md. at 700–702, 542 A.2d at 1062 (on repeated occasions, the two defendants committed various acts of sexual child abuse on their 13 and 14 year old daughters); *Johnson v. State,* 310 Md. 681, 682–683, 531 A.2d 675, 675–676 (1987) (involved a vicious attack, with a baseball bat, upon the victim); *Simms v. State, supra,* 288 Md. at 715–718, 421 A.2d at 959–960 (one defendant assaulted the victim with a wine bottle and the other defendant assaulted a different victim with a gun); *Johnson v. State, supra,* 283 Md. at 200–203, 388 A.2d at 928–930.

Underlying Judge Chasanow's insistence that the General Assembly intended cumulative punishments in this case is the view that merging an offense with a 10–year maximum sentence into an offense with one-year maximum sentence is illogical and unsound. In our view, the merger

principles which have been consistently followed by this Court are neither illogical nor unsound.

The required evidence test merger situation involving a greater offense with a shorter maximum penalty, and an included offense with a longer maximum penalty, typically arises when the included offense is a relatively broad offense covering a wide range of conduct and the greater offense (because of the additional elements) is a narrower offense covering the specific type of conduct engaged in by the defendant. *See, e.g., Biggus v. State, supra,* 323 Md. at 350–352, 593 A.2d at 1065–1066 (offense of battery, carrying a greater maximum penalty, was merged into a sexual offense, carrying a lesser maximum penalty).[19] The longer maximum penalty for the included offense is appropriate because of the wide range of conduct encompassed and the need for flexibility in sentencing depending upon the conduct involved in a particular case. *See Simms v. State, supra,* 288 Md. at 726, 421 A.2d at 965 ("basic crimes such as simple assault or larceny can embrace an almost infinite variety of fact patterns"). *See also State v. Duckett,* 306 Md. 503, 510–511, 510 A.2d 253, 257 (1986) ("the types of offenses which fall within the ambit of the crime of battery vary widely"). The maximum penalty prescribed by statute for the greater and more circumscribed offense, however, represents a legislative judgment concerning the punishment for the precise type of conduct prohibited by that statute. In light of this, as well as the usual rule of law that the specific controls over the general, it is reasonable to sentence the defendant in accordance with the offense more specifically tailored to his or her conduct.

---

**19.** *See also, e.g., Johnson v. State, supra,* 283 Md. at 203–204, 388 A.2d at 930 (conviction for false pretenses, with a ten-year maximum prison sentence, was merged into a conviction for welfare fraud, with a three-year maximum prison sentence); *Marks v. State,* 230 Md. 108, 112–113, 185 A.2d 909, 911–912 (1962) (conviction for common law assault, carrying a greater maximum prison sentence, was merged into assault with intent to maim, which then carried a ten-year maximum prison sentence); *Slye v. State,* 42 Md.App. 520, 525–527, 401 A.2d 195, 198–200 (1979) (conviction for larceny, for which the maximum prison sentence was fifteen years, was merged into a conviction for shoplifting, for which the maximum prison sentence was three years).

Section 554, like common law battery, is an offense of a "very broad and sweeping nature" and a statute "containing broad general language," *Schochet v. State, supra,* 320 Md. at 729, 731, 580 A.2d at 183, 184. Section 554 encompasses conduct ranging from the extremely heinous forceful attack upon a pregnant woman, by her doctor, involved in *Berger v. State,* 179 Md. 410, 20 A.2d 146 (1941),[20] to the consensual, heterosexual conduct between two adults involved in *Neville v. State, supra,* 290 Md. at 370–371, 430 A.2d at 573 (1981). Contrary to the apparent view of the dissenting opinions, the General Assembly obviously did not contemplate that every type of conduct falling within the broad proscriptions of § 554 be punished with ten years imprisonment. If the General Assembly had contemplated such a result, it would not have enacted § 464C(a)(2), because every violation of § 464C(a)(2) is also a violation of § 554 or § 553.

While § 554 is a broad statute, § 464C(a)(2) is narrow, applying only to "cunnilingus, fellatio, analingus, or anal intercourse" performed upon a 14 or 15 year old by a person four or more years older. The distinctive elements of § 464C(a)(2), not found in § 554, which brings the present case within § 464C(a)(2)'s coverage, are the ages of the defendant and of the person upon whom he performed fellatio.

In arguing that it is illogical to limit the defendant's sentence to one-year imprisonment, Judge Chasanow emphasizes the "aggravating circumstance" that the youth involved was 15 years of age. But it is precisely because the youth was 15 years old that the case falls within § 464C(a)(2). Section 464C(a)(2) is specifically and deliberately aimed at sexual relations with 14 or 15 year olds. The whole purpose of those provisions of a fourth degree sexual offense relating to consensual sexual activity (§ 464C(a)(2) and § 464C(a)(3)) was to prohibit an adult from engaging in such activity with a 14 or 15 year old. Moreover, in the very next sentence of the fourth degree sexual offense statute, § 464C(b), the General Assem-

---

**20.** *See Records and Briefs* in the Court of Appeals, Record No. 2, April Term 1941.

bly determined that the older person who engages in the proscribed sexual activity with a 14 or 15 year old "is subject to imprisonment for a period of not more than one year. . . ."[21] What Judge Chasanow's dissenting opinion really finds "illogical," it would seem, is the General Assembly's judgment that a person who performs fellatio on a 15 year old should be subject to a maximum of only one year imprisonment. Nevertheless, that is a matter for the General Assembly and not for this Court.

As previously mentioned, because every violation of § 464C(a)(2) is also a violation of either § 554 or § 553, under Judge Chasanow's view every violation of § 464C(a)(2) would be punishable by a maximum of eleven years imprisonment. Such eleven year effective maximum sentence for conduct constituting a fourth degree sexual offense under § 464C(a)(2) would be greater than the ten-year maximum sentence for a third degree sexual offense under § 464B. This result would be illogical.

For the reasons discussed above, the Court of Special Appeals in this case correctly held that the § 554 offense merges into the § 464C(a)(2) offense under the required evidence test.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY ALLEGANY COUNTY.

McAULIFFE, Judge, dissenting.

In my view, the two convictions in this case are for the "same offense" within the meaning of the Double Jeopardy Clause of the Fifth Amendment. The Fifth Amendment is satisfied, however, if either of the convictions is vacated, and

---

21. Where the person upon whom the sexual act was performed is under 14 years of age, or where the act is nonconsensual and the result of force or threat of force, the person performing the sexual act is guilty of a second degree sexual offense under § 464A, carrying a maximum penalty of 20 years imprisonment. The defendant in this case was not charged with activity violating either § 464A or 464B (third degree sexual offense punishable by a maximum prison sentence of 10 years).

does not require that the conviction left standing be of the offense having the greatest number of elements. Under the circumstances of this case, I would vacate the judgment of conviction of fourth degree sexual offense, and affirm the judgment for the more serious offense of committing an unnatural or perverted sexual practice.

## I.

In order not to be considered the same offense for double jeopardy purposes, each offense much require proof of a fact that the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Although the fourth degree sexual offense (§ 464C offense) contains at least one element that the unnatural and perverted sexual offense (§ 554 offense) does not, the converse is not true. Under the facts of this case, nothing more was needed to prove a § 554 offense than was required to prove a § 464C offense.

As the majority points out, when applying the *Blockburger* test to offenses having alternative elements, a court must examine the alternative elements relevant to the case at issue. In his dissent, Judge Chasanow concludes that a § 554 offense *could* require proof of a fact not required to establish a § 464C offense (penetration of the mouth by a sexual organ), and therefore the *Blockburger* test is satisfied and the two offenses are not the same. I do not agree with that analysis. The inquiry should be case specific, rather than based on theoretical scenarios. In the instant case, the single fact relied on by the State to establish both offenses was that the defendant took the penis of the complainant into his mouth. Judge Chasanow contends that a non-penetrating contact between the complainant's penis and the defendant's mouth would have satisfied the "fellatio" element of § 464C, but not the oral sex element of § 554. Assuming the accuracy of that statement, it is of no consequence here, because it is to the facts required to prove the § 464C violation in this case that we look, and not to what might occur in some other case.

In *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), the defendant challenged, on double

jeopardy grounds, a conviction of robbery with firearms following a conviction of felony murder. He argued that the predicate felony relied on by the State to establish felony murder was the same robbery with firearms for which he was subsequently convicted. Although it is perfectly obvious that the felony element of felony murder may be established by proof of any number of violent felonies, and thus successive prosecutions for felony murder and for robbery with firearms would not offend the Double Jeopardy Clause if the underlying felony relied on to establish the felony murder were anything other than robbery with firearms, those were not the facts of the *Harris* case. Focusing on the particular facts of that case, and the facts relied on by the State to prove the felony murder, the Supreme Court held that a successive prosecution for robbery with firearms was barred. To the same effect, see *Newton v. State,* 280 Md. 260, 265–68, 373 A.2d 262 (1977).

## II.

Multiple punishments may be permitted for offenses that are the same within the meaning of the Double Jeopardy Clause, but only when the legislature specifically intends that result.

> The *Blockburger* rule does not provide the final answer in cases involving multiple punishment because, when specifically authorized by the legislature, cumulative sentences for the same offense may under some circumstances be imposed after a single trial. *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983); *Albernaz v. United States,* 450 U.S. 333, 343–44, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Accordingly, when dealing with the question of multiple punishments imposed after a single trial, and based on the same conduct, a critical question is one of legislative intent. The *Blockburger* test is helpful in such cases as an aid in determining legislative intent, but is not dispositive.

*Randall Book Corp. v. State,* 316 Md. 315, 323–24, 558 A.2d 715 (1989). I find no indication that the legislature intended

to permit multiple punishments when the same conduct resulted in violations of § 464C and § 554. Accordingly, I agree with the majority that one of the convictions must be vacated.

### III.

I do not agree that the proper remedy in this case is to vacate the § 554 conviction and the accompanying sentence of 10 years imprisonment[1] and a fine of $1,000, and to leave standing the § 464C conviction and its sentence of one year imprisonment (suspended) and a fine of $1,000. The Double Jeopardy Clause is fully satisfied if one of the convictions is vacated and the defendant is given a sentence no greater than was intended by the legislature. As Justice Kennedy pointed out for the Supreme Court, "neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls." *Jones v. Thomas,* 491 U.S. 376, 387, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). Unless the legislature intended that § 464C entirely supplant § 554 when the described age differential was present,[2] a result not suggested by the majority nor supported by the facts, the penalty imposed for the violation of § 554 is entirely proper. Vacating the conviction for § 464C and allowing the more serious conviction and sentence to stand would provide complete relief from the violation of the Double Jeopardy Clause, be fair, and be logical.

CHASANOW, Judge, dissenting.

### I.

The end result reached by the Court in the instant case is that, because the defendant committed fellatio on a 15–year–

---

1. Five years of the prison term were suspended in favor of five years probation.

2. *See State v. Gibson,* 254 Md. 399, 401, 254 A.2d 691 (1969) (by creating offense of manslaughter by automobile, legislature intended to encompass entire field of unintentional criminal homicides resulting from the operation of a motor vehicle).

old boy, he is guilty of two crimes and the maximum punishment is one year incarceration. Had the youth been over 15 years of age, then the defendant would be guilty of only one crime, but the maximum punishment would have been ten years' incarceration. It is bad enough for the Court to reach this illogical result, but to reach it when charged with the duty of effectuating the intent of the legislature is an affront to that branch of government.

Harry Whinna Lancaster was 53 years old when he met 15–year–old Louis W. in July of 1988. Lancaster initially ingratiated himself to Louis by paying for an occasional meal and sponsoring a night at the skating rink. Lancaster began inviting Louis to his home. Louis testified that, on the first visit, Lancaster showed him his gun collection and the two watched television. Two days later, Lancaster picked up Louis and, on the way to Lancaster's home, bought an X-rated video tape. Once home, Lancaster put the tape in his VCR and, after twenty minutes of viewing, Lancaster pulled down Louis's pants and performed "oral sex" on Louis. Afterward, the two went to the skating rink where Lancaster paid Louis's admission. This scenario became the blueprint for regular tri-weekly rendezvous where Lancaster would have "oral sex" with Louis. Louis testified that approximately six months after the first encounter, he contacted the police because he was feeling "bad about [him]self" and didn't want to become like Lancaster.

Lancaster was charged and convicted by a jury in the Circuit Court for Allegany County of one count of committing an unnatural or perverted sexual practice under Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 554 [1] and one count of committing a fourth degree sexual offense under § 464C(a)(2). Both offenses were alleged to have occurred over approximately a six-month period from July, 1988 through January, 1989. Lancaster received the maximum penalty of ten years' imprisonment and a fine of $1,000 for the

---

1. All references are to Maryland Code (1957, 1987 Repl.Vol.), Article 27 unless otherwise indicated.

conviction under § 554 with five years of the ten-year sentence suspended and five years' probation. Lancaster also received the maximum penalty of one year imprisonment and a $1,000 fine under § 464C, that term of imprisonment was suspended and five years probation was imposed to run concurrently with the probation for the suspended portion of the sentence imposed under § 554. Lancaster appealed his convictions to the Court of Special Appeals. The intermediate appellate court vacated the conviction and ten-year sentence for unnatural or perverted sex practices holding that, under the required evidence test, that conviction and sentence merged into the conviction and one-year suspended sentence for a fourth degree sex offense under § 464C. The State filed a petition for certiorari which this Court granted.[2]

I fully agree with the majority's analysis that

"We have often pointed out that ' "[u]nder settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is the lesser included offense of the other, . . . when both offenses are based on the same act or acts, is the so-called 'required evidence test.' " '

The required evidence test ' "focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter." ' Stated another way, the ' "required evidence is that which is minimally necessary to

---

**2.** The issue in the State's petition for certiorari and the issue before this Court is "[w]hether the Court of Special Appeals erred in holding that [Lancaster's] conviction for perverted practice under [Maryland Code (1957, 1987 Repl.Vol.)], Article 27, § 554 must be vacated on the basis of merger under the required evidence test in light of [Lancaster's] conviction for fourth degree sexual offense under Article 27, § 464C." The State's analysis as to why there should be no merger and why Lancaster's conviction under § 554 should not be vacated differ slightly from the analysis set forth in this opinion. Where this Court agrees with the State's contention and affirms the trial judge, we should not be limited solely to the reasons offered by the State. *Cf. Robeson v. State,* 285 Md. 498, 501–04, 403 A.2d 1221, 1223–24 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not," ' there is no merger under the required evidence test even though both offenses are based upon the same act or acts. ' "But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other," and where both "offenses are based on the same act or acts, ... merger follows...." ' '

* * * * * *

When applying the required evidence test to multi-purpose offenses, *i.e.*, offenses having alternative elements, a court must 'examin[e] the alternative elements relevant to the case at issue.'" (Citations omitted).

332 Md. at 391–92, 631 A.2d at 456–57.

In *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), a majority of the Supreme Court overruled its recent decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and reiterated that the *Blockburger* or "same elements" test is the only test for determining whether two offenses are the same for double jeopardy purposes. *Dixon*, —— U.S. at —— & n. 13, 113 S.Ct. at 2862 & n. 13, 125 L.Ed.2d at 575 & n. 13 (interpreting *Gavieres v. United States, infra*, to conclude that successive prosecutions are permissible if "the *Blockburger* test (and *only* the *Blockburger* test) [is] satisfied" (emphasis in original)). *See also Gavieres v. United States*, 220 U.S. 338, 342–44, 31 S.Ct. 421, 422–23, 55 L.Ed. 489, 490 (1911) and *Burton v. United States*, 202 U.S. 344, 378–81, 26 S.Ct. 688, 697–99, 50 L.Ed. 1057, 1070–71 (1906) (both allowing successive prosecutions according to an application and satisfaction of the "same elements" test). Included within the *Blockburger* test is the common law doctrine prohibiting successive prosecution of a lesser included offense. *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). "*Nielsen* simply applies the common proposition, entirely in accord with *Blockburger*, that prosecution for a greater offense ... bars prosecution for a lesser

included offense...." *Dixon,* —— U.S. at ——, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. "The collateral-estoppel effect attributed to the Double Jeopardy Clause, see *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), [also] may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts." *Dixon,* —— U.S. at ——, 113 S.Ct. at 2860, 125 L.Ed.2d at 573 (emphasis in original).

Separate prosecutions are always precluded and separate sentences are normally precluded when, focusing on the required elements of the offenses rather than the defendant's criminal conduct, we cannot identify an element in each offense which is not common to the other offense. *Id.* at ——, 113 S.Ct. at 2855–56, 125 L.Ed.2d at 567–68. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (delineating required elements test). Our inquiry therefore must be whether the fourth degree sexual offense under Art. 27, § 464C(a)(2), for which Lancaster was convicted, and the unnatural or perverted sex practice offense under Art. 27, § 554, for which Lancaster was convicted, each contain an element which the other does not. If after analyzing the statutes each offense does not contain a distinct element not required by the other, then separate punishments may not be imposed unless the legislature intended otherwise.

The specific fourth degree sex offense of which Lancaster was convicted was engaging in fellatio "with another person who is 14 or 15 years of age and the person performing the sexual act is four or more years older than the other person...." Art. 27, § 464C(a)(2).[3] The specific statutory un-

---

3. Section 464C provides in pertinent part as follows:

"**§ 464C. Fourth degree sexual offense.**

natural or perverted sex act that Lancaster was convicted of was "taking into his ... mouth the sexual organ of any other person." Art. 27, § 554.[4]

Beginning our "required elements" analysis, it is obvious that the fourth degree sex offense contains an age element which unnatural or perverted sex practices does not, because the person performing the act must be four or more years older than the 14 or 15–year–old victim. The next inquiry is

---

(a) *What constitutes.*—A person is guilty of a sexual offense in the fourth degree if the person engages:

 \* \* \* \* \* ' \*

(2) In a sexual act with another person who is 14 or 15 years of age and the person performing the sexual act is four or more years older than the other person;

 \* \* \* \* \* \* .

(b) *Penalty.*—Any person violating the provisions of this section is guilty of a misdemeanor and upon conviction is subject to imprisonment for a period of not more than one year, or a fine of not more than $1,000, or both fine and imprisonment."

Art. 27, § 461, provides in pertinent part as follows:

"**§ 461. Definitions.**

(a) *In general.*—In this subheading, the following words have the meanings indicated.

 \* \* \* \* \* \*

(e) *Sexual act.*—'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes."

4. Section 554 provides in pertinent part as follows:

"**§ 554. Unnatural or perverted sexual practices.**

Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court."

whether the unnatural or perverted sex practice of "taking into [one's] mouth the sexual organ of [another]" requires more than, and therefore is different from, the fourth degree sexual act of fellatio. Since the legislature used different terms, *i.e.*, "fellatio" under § 464C and "taking into [one's] mouth the sexual organ of [another]" in § 554, we may logically assume the statutes meant to punish different acts. The trial judge and both parties seemed to be under the impression that both statutes required different acts. Without any objection, the trial judge gave the following instruction to the jury:

"Now there are two charges that you must consider in this case. First, a statutory offense known as sexual offense in the fourth degree. In order to convict the Defendant of a sexual offense in the fourth degree, the State must prove the following elements: that the Defendant *committed fellatio* with the witness Louis [W.]; that at the time the witness Louis [W.] was either fourteen or fifteen years of age; and that at the time the Defendant was at least four years older than the witness Louis [W.].

Now fellatio means that the Defendant *applied his mouth to the sexual organ* of the witness Louis [W.]. . . .

\* \* \* \* \* \*

Secondly, the Defendant is charged with the offense of unnatural and perverted sexual practices. . . . In order for the Defendant to be convicted of this offense, the State must prove to you unanimously and beyond a reasonable doubt that the Defendant *took into his mouth the sexual organ of the witness* Louis [W.]." (Emphasis added).

If there ever was any doubt that fellatio as defined in the sexual offense statutes is different from the act of taking into his or her mouth the sexual organ of any other person under § 554, it was clearly resolved in *Thomas v. State,* 301 Md. 294, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).

In *Thomas,* Chief Judge Murphy writing for the Court stated:

"Appellant alleges that there was insufficient evidence to support his conviction for the first degree sexual offense of forcing Ms. Wilkins to perform fellatio upon him. He argues that Code, Art. 27, § 554, as interpreted in *Gooch v. State*, 34 Md.App. 331, 367 A.2d 90 (1976), requires proof that the sexual organ penetrated the mouth. The evidence presented at trial indicated that Ms. Wilkins was forced to 'kiss' appellant's penis. Since there was no showing that the mouth was penetrated, he argues that the evidence was insufficient to support the first degree sexual offense conviction.

Appellant's contention is meritless. Section 554 pertains to the crime of 'unnatural or perverted sexual practices'; he was not charged with violating this law. Rather, appellant was convicted of a first degree sexual offense as set forth in § 464(a) of Art. 27, which provides:

'A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With another person by force or threat of force against the will and without the consent of the other person, and:

(i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon....'

\* \* \* \* \* \*

The term 'sexual act,' as used in this section, is defined by Art. 27, § 461(e) to include 'fellatio'—a word not defined in the statute. We think that the legislature intended to give 'fellatio' its common, ordinary and well-accepted meaning. *Black's Law Dictionary* 743 (4th ed. rev. 1968) defines fellatio as an 'offense committed with the male sexual organ and the mouth.' *See also People v. Sohmers*, 55 Misc.2d 925, 286 N.Y.S.2d 714, 717 (Crim.Ct.196[8]); *State v. McParlin*, 422 A.2d 742, 743 n. 2 (R.I.1980). *Webster's Third New International Dictionary* gives the following definition: 'the practice of obtaining sexual satisfaction by oral stimulation of the penis.' Under the general view,

proof of penetration is not required; all that must be shown is some contact between the mouth and the male organ. *Carter v. State*, 122 Ga.App. 21, 176 S.E.2d 238 (1970); *State v. Phillips*, 365 So.2d 1304 (La.1978), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); *McDonald v. State*, 513 S.W.2d 44 (Tex.Crim.App.1974). Therefore, we hold that fellatio, within the meaning of § 461(e), encompasses the oral contact with the male sex organ involved in this case."

*Id.* at 320–21, 483 A.2d at 19–20. *Thomas* establishes that § 554 contains a requirement that the fourth degree sexual offense under § 464C does not. The specific statutory offense, under § 554, of taking *into* one's mouth the sexual organ of another requires more than fellatio, which is simply, oral genital *contact* under § 464C. Since each offense contains a requirement that the other does not, the two convictions do not violate the *Blockburger* required evidence test and there can be separate convictions.[5]

## II.

Although it is clear that the *Blockburger* test is the only test for successive prosecutions, cumulative sentences arising from the same prosecution may implicate additional issues such as the rule of lenity and merger.

---

**5.** It is possible that fellatio, *i.e.*, oral genital contact not involving taking into one's mouth the sexual organ of another, could be an unnatural or perverted sex practice under § 554's catch-all phrase covering "any other unnatural or perverted sex practice." There is at least some *dicta* to that effect in a few cases. *See Schochet v. State*, 320 Md. 714, 718, 732, 580 A.2d 176, 178, 185 (1990) (referring to the defendant being charged with "fellatio, in violation of Art. 27, § 554," and referring to the fact that "cases in this Court have upheld convictions under § 554 based on engaging or attempting to engage in fellatio"); *Neville v. State*, 290 Md. 364, 377, 380–81, 430 A.2d 570, 576–77, 578 (1981) (equating the § 554 charge there involved with "fellatio" and "oral sodomy"). If, however, fellatio is simply one of the generic "other unnatural or perverted sex practice[s]" prohibited by § 554, then this offense differs from, and contains elements not included in, the prohibited "sexual act[s]" of the fourth degree sex offense statute, § 464C. A statute punishing fellatio is obviously not the same offense as a statute punishing *any* unnatural or perverted sex practice.

Successive prosecutions are barred if the two offenses are the same under the *Blockburger* test or violate the *Ashe v. Swenson* collateral-estoppel prohibition. Cumulative (as distinguished from successive) sentences present slightly different considerations. I will make no attempt to discuss all of the somewhat perplexing cases discussing, for sentencing purposes, common law double jeopardy, constitutional double jeopardy, merger, and the rule of lenity. I will even assume for the purpose of the cumulative sentences discussion that cumulative sentences imposed by the trial judge violate the *Blockburger* test and implicate all common law prohibitions, including the rule of lenity and merger, but that does not end our inquiry. Obviously, the legislature can change the common law by statute. *Wildermuth v. State,* 310 Md. 496, 529, 530 A.2d 275, 291–92 (1987); *Jones v. State,* 303 Md. 323, 337 n. 10, 493 A.2d 1062, 1069 n. 10 (1985); *Pope v. State,* 284 Md. 309, 341, 396 A.2d 1054, 1073 (1979). *See also* Maryland Declaration of Rights, Article 5(a). Further, as I will discuss, the legislature can even provide for cumulative sentences for offenses that clearly are the same under the *Blockburger* test. For example, the legislature can provide in one statute that robbery is punishable by ten years and in a second statute that robbery with a handgun is punishable by ten years, which sentence shall be in addition to any sentence imposed for robbery. Robbery is a lesser included offense within robbery with a handgun, and the two offenses are the same under the *Blockburger* test since each does not contain an element not found in the other. Yet, as we will see, the legislature is free to authorize cumulative punishments.

In *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Supreme Court stated that "simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Id.* at 368, 103 S.Ct. at 679, 74 L.Ed.2d at 543. *See also Ohio v. Johnson,* 467 U.S. 493, 500 n. 8, 104 S.Ct. 2536, 2541 n. 8, 81 L.Ed.2d 425, 433 n. 8 (1984) ("Even if the crimes

are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."); *United States v. Woodward,* 469 U.S. 105, 107–10, 105 S.Ct. 611, 612–13, 83 L.Ed.2d 518, 520–22 (1985) (determining that cumulative punishment was permissible for convictions under the federal currency reporting statute and the false statement statute, where each conviction was based on the same conduct). For additional Supreme Court cases categorizing the *Blockburger* test as a "rule of statutory construction" in the single prosecution/multiple punishment context, see *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275, 282 (1981); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 723 (1980).

Even before the Supreme Court decided *Missouri v. Hunter,* this Court in *Newton v. State,* 280 Md. 260, 274 n. 4, 373 A.2d 262, 269 n. 4 (1977), pointed out that multiple punishments under two different statutory provisions, deemed the same offense under the required evidence test, could in some circumstances be cumulatively imposed for the same act where the legislature expressly indicated such an intent.

In several other post–*Newton* cases, this Court has recognized that the legislature may punish certain conduct by imposing punishment pursuant to two separate statutory offenses which would otherwise be deemed the same pursuant to the *Blockburger* required evidence test. In *Randall Book Corp. v. State,* 316 Md. 315, 558 A.2d 715 (1989), Judge McAuliffe writing for the Court stated, "when dealing with the question of multiple punishments imposed after a single trial, and based on the same conduct, a critical question is one of legislative intent. The *Blockburger* test is helpful in such cases as an aid in determining legislative intent, but is not dispositive." *Id.* at 324, 558 A.2d at 720.

In *Whack v. State,* 288 Md. 137, 149, 416 A.2d 265, 271 (1980), *appeal dismissed* and *cert. denied,* 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981), this Court, following the legislature's intent, sustained separate convictions and sen-

tences for use of a handgun in the commission of a felony and for the underlying felony (armed robbery) despite the fact that the two violations would be deemed the same offense under the *Blockburger* test. The Court stated: "The imposition of multiple punishment . . . is often particularly dependent upon the intent of the Legislature." *Id.*, at 143, 416 A.2d at 268.

More recently, this Court in *Frazier v. State,* 318 Md. 597, 569 A.2d 684 (1990), held that the, conviction for carrying a handgun did not merge into the conviction for possessing a revolver, even if the two offenses were deemed the same under the required evidence test, because we determined that the legislature did not intend to prohibit separate penalties for violation of the two statutes. *Id.* at 614–15, 569 A.2d at 693. In *Frazier,* the Court relied upon *Whack* acknowledging that " '[t]he imposition of multiple punishment . . . is often particularly dependent upon the intent of the Legislature.' " *Id.* at 613, 569 A.2d at 692 (quoting *Whack,* 288 Md. at 143, 416 A.2d at 268).

The *Whack/Frazier* line of cases recognizes that common law merger principles may be modified by the legislature and that separate punishment for two offenses deemed the same under the *Blockburger* test is a question of legislative intent.

### III. *Legislative Intent*

The issue before this Court, therefore, would seem to be one of statutory construction and dependent on the intent of the legislature. The conclusion reached by the majority suggests that unless the sentencing court merged the ten-year sentence for violation of Art. 27, § 554, into the one-year sentence for violation of Art. 27, § 464C, the punishment would have exceeded the one-year maximum intended by the legislature.

In determining whether cumulative sentences may be imposed for the same offense, this Court has said: "The key, of course, is legislative intent. As helpful as the various rules of statutory construction may be in determining legislative intent, perhaps the soundest guidance comes from the Supreme

Court's admonition that we give the language of a statute a 'commonsensical meaning.' " *Randall Book,* 316 Md. at 324, 558 A.2d at 720 (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952)). The Court also stated in *Randall Book* that "[t]he *Blockburger* test is helpful ... as an aid in determining legislative intent, but [it] is not dispositive." *Id.* The invocation of common sense is also important in ensuring a reasonable result. *See D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179–80 (1990) (stating that "construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided").

In *Eldridge v. State,* 329 Md. 307, 619 A.2d 531 (1993), the Court discussed how we go about ascertaining legislative intent in cases where the defendant claims his separate sentences under two different statutes violate double jeopardy/merger principles. We said:

> "We approach the propriety of the two sentences ... from the pinnacle we have reached in our many attempts to divine legislative intent. We have set out the guidelines so often that there is no need to detail them here. Suffice it to say, the key to legislative interpretation is the purpose of the legislation, determined in the light of the statute's language and context. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 516, 525 A.2d 628 (1987). *See Warfield v. State,* 315 Md. 474, 499–500, 554 A.2d 1238 (1989). 'We may and often must consider other "external manifestations" or "persuasive evidence".' *Kaczorowski,* 309 Md. at 515, 525 A.2d 628. ' "[R]esults that are unreasonable, illogical or inconsistent with common sense should be avoided ... with the real legislative intention prevailing...." ' *Id.* at 516, 525 A.2d 628, quoting *Potter v. Bethesda Fire Department,* 309 Md. 347, 353, 524 A.2d 61 (1987), quoting *State v. Fabritz,* 276 Md. 416, 421–422, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976)."

*Id.,* 329 Md. at 312–13, 619 A.2d at 534.

The question we have before us is what did the legislature intend when it made oral genital contact punishable by up to

ten years under § 554, but oral genital contact upon a 14 or 15–year–old child by an adult under § 464C punishable by one year. I believe there is only one clear and obvious intent. Generally, oral genital contact is punishable by up to ten years; the same act practiced upon a 14 or 15–year–old by an adult over four years older is punishable by up to one *additional* year. The two statutes unquestionably were meant to be cumulative.

In cases where this Court has tried to determine whether the legislature intended to authorize cumulative punishment, we have read the statutes "in light of external manifestations of intent or general purpose available through other evidence [and have] consider[ed] 'the general history and prevailing mood of the legislative body with respect to the type of criminal conduct involved.'" *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989) (quoting *Randall Book*, 316 Md. at 327, 558 A.2d at 721).

The Maryland General Assembly initially proscribed unnatural or perverted practices by enacting § 554 (then § 439–A) by Chapter 616 of the Acts of 1916 and imposed a maximum imprisonment of ten years upon conviction under the statute. Sixty years later, by Ch. 573 of the Acts of 1976, the legislature "enacted significant and comprehensive legislation which codified Maryland law on rape and other sexual offenses." J. William Pitcher, *Rape and Other Sexual Offense Law Reform in Maryland, 1976–1977*, 7 U.Balt.L.Rev. 151 (1977). Section 464C, which defines and proscribes fourth degree sex offenses, was a part of the 1976 enactment. This Court in *Schochet v. State*, 320 Md. 714, 580 A.2d 176 (1990), had occasion to examine the legislature's intent regarding the effect that Ch. 573 of the Acts of 1976 was to have upon § 554:

"As originally introduced and as approved by the Senate Judicial Proceedings Committee, Senate Bill 358, which became Ch. 573 of the Acts of 1976, would have repealed Art. 27, §§ 553 and 554. The Senate Judicial Proceedings Committee report on Senate Bill 358 stated:

'Present law proscribes consensual anal (sodomy) or oral (perverted practices) sexual acts. Since these crimes [under §§ 553 and 554], when committed between consenting adults, are very rarely prosecuted because of their clandestine and personal nature, they are not a proper subject of statutory recognition by prohibition.' Nevertheless, before final enactment, Senate Bill 358 was amended so as not to repeal §§ 553 and 554. Those sections were left intact."

*Id.* at 734–35, 580 A.2d at 186.[6] The Court in *Whack* and *Frazier* examined the legislative history involved in those cases and noted that the General Assembly, upon the enactment of the later statute, amended or superseded some, but not all, of the existing statutes. The *Frazier* Court recognized that " '[w]here [the legislature] desired no duplication, it specifically amended or superseded those other statutes.' " *Frazier,* 318 Md. at 614, 569 A.2d at 693 (quoting *Whack,* 288 Md. at 146, 416 A.2d at 270). Thus, in concluding that the legislature did not intend the offenses to be duplicative and did not intend for them to merge, the Court found it was "significant that the Legislature did not amend or supersede" the earlier existing statute. *Id.* In the instant case, the legislative history likewise discloses the fact that the legislature was aware of the duplicative nature of the 1976 statutory scheme and the already existing §§ 553 and 554. The fact that the legislature specifically declined to repeal or amend § 554 indicates that it did not intend for the 1976 statutory provisions to supplant § 554.

To be sure, this Court has on several occasions merged an offense with a higher penalty into an offense that contained an additional element yet contained a lower penalty. An analysis of each of these cases reveals that generally they are cases where the legislative intent was not clear and it was at least

---

6. The Court in *Schochet v. State,* 320 Md. 714, 580 A.2d 176 (1990), did not reach the constitutionality of the statute and, as the defendant in the instant case did not raise the issue at trial, it is not properly before the Court. Maryland Rule 8–131(a).

conceivable that the additional element might have been considered by the legislature as a mitigating circumstance, or cases where the "lesser" offense was a common law offense with *no* statutory maximum.

In *Flannigan v. State,* 232 Md. 13, 191 A.2d 591 (1963), the defendant was convicted of obtaining $57.00 by a bad check with intent to defraud in violation of then Maryland Code (1957, 1962 Cum.Supp.), Art. 27, § 142. He was also convicted, under a separate count, of obtaining money by false pretenses. Both convictions were based on the same acts. The maximum authorized sentence for the § 142 conviction was imprisonment for eighteen months if the amount was under $100 and ten years if the amount was over $100. The authorized sentence for the false pretenses conviction was, under then Art. 27, § 140, imprisonment "for not less than two years nor more than ten years" regardless of the amount. The trial court imposed a sentence of two years' imprisonment which was authorized for the false pretenses conviction, but not by § 142 because the amount was under $100. On appeal, this Court remanded, ordering that the judgment under the false pretenses count be stricken out and that sentence be imposed on the § 142 conviction not to exceed eighteen months' imprisonment. In holding that the false pretenses conviction merged into the § 142 conviction under the required evidence test, and that the prison sentence could not exceed the eighteen-month maximum authorized by § 142, this Court stated simply:

> "In this case, a sentence of two years was imposed. When the value of the property obtained is under the value of $100 in a conviction under § 142, the maximum penalty is a $50 fine and eighteen months' confinement. We shall, therefore, remand the case for the imposition of a proper sentence under the conviction on the third count."

*Id.* at 19, 191 A.2d at 594. It is clear that one of the additional elements of the eighteen-month "greater offense" was that the value of the property wrongfully obtained was under $100. Clearly that additional element was a mitigating factor.

The majority cited and relied on *Johnson v. State*, 283 Md. 196, 203–04, 388 A.2d 926, 930 (1978), which held that the included offense merged into the offense having a distinct additional element. In that case, the defendant Johnson, an employee of the State Department of Social Services, devised and carried out a scheme under which he defrauded the State out of a substantial sum of money by preparing and submitting false applications for welfare payments which resulted in the Department's issuing checks to various fictitious persons. Johnson or an accomplice then cashed the checks. Johnson was convicted of obtaining money by false pretenses and of welfare fraud in violation of Art. 27, § 230A. As previously indicated, the maximum penalty for a conviction of obtaining money by false pretenses was ten years' imprisonment. The maximum penalty for welfare fraud under § 230A was, and still is, three years' imprisonment. Johnson was sentenced to four years' imprisonment on the false pretenses convictions and sentenced to concurrent terms on the welfare fraud convictions. The Court of Special Appeals, holding that the welfare fraud convictions merged into the false pretenses convictions, vacated the judgments on the welfare fraud counts. This Court, however, in an opinion by Judge Marvin Smith, held that, under the required evidence test, false pretenses was an included offense within welfare fraud, that the convictions for false pretenses merged into the convictions for welfare fraud, and that "[t]he sentence must be under § 230A, which provides the lesser penalty. Thus, the Court of Special Appeals erred." *Johnson*, 283 Md. at 204, 388 A.2d at 930. The legislative intent with regard to cumulative sentences was unclear and it was at least conceivable that the legislature felt it was a less serious offense to defraud the State Department of Social Services than to defraud a private citizen or corporate entity.

Another case where an offense with a higher penalty merged into an offense with a lower penalty is *Nightingale v. State*, 312 Md. 699, 542 A.2d 373 (1988), which held that, where a sexual offense is a required element of child abuse, the conviction for the sexual offense must merge into the convic-

tion for child abuse even if the sexual offense carried a higher penalty than child abuse. *Id.* at 708, 542 A.2d at 377. Although illogical, it was at least possible that the legislature intended that a sexual offense by a child's parent, custodian, or supervisor was theoretically, slightly less traumatic or severe than the same sexual offense committed on the child by a stranger. Therefore, the additional element in the child abuse statute was at least conceivably a mitigating element. The legislature quickly made it clear that their intent was that these offenses could be punished cumulatively and amended the child abuse statute to provide that "[t]he sentence imposed under this section may be imposed separate from and consecutive to or concurrent with a sentence for any offense based upon the act or acts establishing the abuse." Md.Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, § 35A(b)(3). *See* Ch. 604 of the Acts of 1990 (noting House Bill 815's "purpose of reversing the holding[ ] of the Maryland Court of Appeals in [*Nightingale*]").

In *Slye v. State,* 42 Md.App. 520, 524–27, 401 A.2d 195, 198–200 (1979), the Court of Special Appeals held that, under the required evidence test, a conviction for larceny, for which the maximum prison sentence was 15 years, merged into a conviction for shoplifting, for which the maximum prison sentence was three years. Again, although the court's analysis was based only on the elements of the offense, it is at least conceivable that the legislature believed that stealing goods from open display counters in mercantile establishments was giving into temptation and thus less severe than other forms of larceny.

In many of the above cited cases, there was *dicta* about the offenses with lesser elements merging into offenses with greater elements regardless of the penalty, but these statements were only *dicta.* It is important to keep in mind the admonition in *Dixon* where, writing for the Supreme Court, Justice Scalia emphasized the importance in this area of " 'the need to distinguish an opinion's holding from its dicta.' " *Dixon,* —— U.S. at ——, 113 S.Ct. at 2861, 125 L.Ed.2d at 574 (quoting *U.S. Nat. Bank of Or. v. Independent Ins. Agents,*

508 U.S. ——, —— n. 11, 113 S.Ct. 2173, 2187 n. 11, 124 L.Ed.2d 402, 423 n. 11 (1993)). In our prior merger cases, a careful analysis of the holdings reveals that the legislative intent was not clear, and it was at least conceivable that the legislature intended that there be a merger of the offense with the higher penalty into the offense with the lower penalty. In none of our prior cases would merger have been as unreasonable and illogical as it would be in the instant case.

Several of our cases have also held that common law offenses with no maximum punishment "merge into," and are limited by, the punishment for the "greater" statutory offense with the added element. For example, in *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980), the defendants were charged, *inter alia,* with assault with intent to rob in violation of Art. 27, § 12, and with common law assault. The maximum sentence for assault with intent to rob is ten years' imprisonment. The only limitation upon the number of years' imprisonment to which a defendant may be sentenced for common law assault, as well as common law battery, is the constitutional prohibition against cruel and unusual punishment. Sentences of twenty years' imprisonment for common law assault have been upheld by this Court. *See Roberts v. Warden,* 242 Md. 459, 219 A.2d 254, *cert. denied,* 385 U.S. 876, 87 S.Ct. 156, 17 L.Ed.2d 104 (1966); *Adair v. State,* 231 Md. 255, 189 A.2d 618 (1963). Assault with intent to rob and common law assault are deemed to be the same offense under the required evidence test. Although common law assault carries the greater maximum penalty, it is the included offense, and assault with intent to rob is the offense with the distinct element, namely an intent to rob. This Court in *Simms* ordered that the sentences for common law assault be vacated and that the cases be remanded for the imposition of a new sentence, which could not exceed the maximum for assault with intent to rob, *i.e.,* ten years' imprisonment. *Simms,* 288 Md. at 727, 421 A.2d at 965.

These common law merger cases are inapposite to the instant case because the common law set no punishment at all for the "lesser" offense, only a constitutional limitation of cruel or unusual punishment. The *only* maximum penalty in these

common law merger cases was the penalty for the greater offense. The legislature could not have intended that the greater offense with a statutory maximum be punished *cumulatively* to an offense that had no maximum penalty. The most likely legislative intent was merger, not cumulative punishment, and the maximum penalty for the greater offense should control. Also, unless the statutory maximum of the "greater" offense was intended to control over the unlimited common law penalty of the "lesser" offense, there was no reason to enact the statute creating the "greater" offense.

The majority's merger analysis implies that the legislature intended to treat the age requirements of § 464C, (*i.e.*, that the victim be 14 or 15 and the perpetrator more than 4 years older), as a mitigating factor requiring a reduction of the maximum penalty under § 554 to the maximum allowable under § 464C. The majority's conclusion that the additional element of § 464C made it the greater offense is based upon principles that the Maryland courts have derived from *Blockburger* in *Simms*, 288 Md. at 726, 421 A.2d at 965; *Johnson v. State*, 283 Md. at 203–04, 388 A.2d at 930; and *Slye*, 42 Md.App. at 525–26, 401 A.2d at 199–200. After citing the *Blockburger* test as "the only feasible test for determining what is a 'greater'" offense, the Court in *Simms* acknowledged:

> "While usually the 'greater offense' under this test will represent the more heinous or aggravated crime, this is not always true. In some situations when the Legislature creates a greater offense by adding an element to a basic crime such as larceny or false pretenses, the additional element may have been viewed as a mitigating rather than an aggravating factor, and for this reason a lesser maximum penalty is provided for the particular greater offense. This is illustrated by the offenses involved in *Johnson v. State, supra*, 283 Md. at 203–204[, 388 A.2d at 929–930], and *Slye v. State, supra*."

*Simms*, 288 Md. at 726, 421 A.2d at 965. It is simply not conceivable that the legislature intended the youthful age of the victim to be either a mitigating factor or a reason to

reduce the punishment. After noting that legislative intent dictates whether a defendant can be punished twice when the conduct violates two statutes each of which proscribe the conduct, Chief Justice Warren aptly observed that "[o]ften the inquiry [into legislative intent] produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration. But this fact should not lead the judiciary, charged with the obligation of construing these statutes, to settle such questions by the easy application of stereotyped formulae.... All relevant criteria must be considered and the most useful aid will often be common sense." *Gore v. United States,* 357 U.S. 386, 394, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405, 1411 (1958) (Warren, C.J., dissenting). *See also Albernaz v. United States,* 450 U.S. 333, 340–41, 101 S.Ct. 1137, 1143–44, 67 L.Ed.2d 275, 282–83 (1981) (noting that silence in the legislative history as to whether the legislature intended to authorize multiple punishment is not to be read as an ambiguity). Logically, the legislature sought to provide additional protection for adolescents and consequently intended the punishment under § 464C to be cumulative to the punishment existing under § 554.

In *Newton,* this Court made an observation that is applicable to the instant case when it noted that,

> "the legislature may indicate an express intent to punish certain conduct more severely if *particular aggravating circumstances are present* by imposing punishment under two separate statutory offenses which otherwise would be deemed the same under the required evidence test." (Emphasis added).

*Newton,* 280 Md. at 274 n. 4, 373 A.2d at 269 n. 4. The youthful age of the "victim" is the "particular aggravating circumstance" which justifies "imposing punishment under two separate statutory offenses which otherwise would be deemed the same under the required evidence test...." *Whack,* 288 Md. at 149, 416 A.2d at 271 (quoting *Newton,* 280 Md. at 274 n. 4, 373 A.2d at 269 n. 4).

Finally, in attempting to determine what the legislature intended as the unit of prosecution under a single statute, the Court in *Randall Book* "look[ed] to the penalty provided for each offense" and found that "[i]f the maximum penalty permitted is quite substantial, that fact may militate against an intent to create multiple units of prosecution." 316 Md. at 327, 558 A.2d at 721. Looking at the relatively insubstantial one-year maximum prescribed for violation of § 464C, it is clear that the legislature did not intend for that penalty to supersede a greater ten-year penalty based upon the same conduct. The General Assembly intentionally declined to repeal § 554 at the time it enacted § 464C. "It is presumed that the General Assembly acted with full knowledge of prior legislation and intended statutes that affect the same subject matter to blend into a consistent and harmonious body of law." *State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9, 12 (1990). I believe that both common sense and the "external manifestations" of the General Assembly indicate that the legislature intended for behavior that violated both § 554 and § 464C to be separately and cumulatively punished. The legislature could not have intended that an unnatural or perverted sex practice carry a maximum of ten years' imprisonment if committed on adults, but only one year if committed on 14 or 15–year–olds. Likewise, the legislature could not have intended that a valid ten-year maximum sentence be reduced to a one-year maximum because the defendant is charged with and convicted of both offenses.

The unsoundness of the majority's holding is also illustrated by its inference that, if the State believed that the one-year maximum prison sentence under § 464C was inadequate, it had a remedy—it could avoid merger by prosecuting only under § 554. According to the majority, the only way the State would have been able to secure the ten-year maximum sentence for Lancaster's conviction under § 554 for unnatural or perverted sex practices would have been to not also prosecute and convict Lancaster for the § 464C fourth degree sex offense. Thus, in order to avoid a merger, the State would have to forego its right to prosecute under § 464C, and

thereby forego having Lancaster's criminal conviction record reflect that his crime was perpetuated on a 14 or 15–year–old child.

The majority's decision in the instant case is that, when a defendant is prosecuted for and convicted of all the statutory crimes he or she committed, an unnatural or perverted sex practice by an adult on an adult carries up to ten years' imprisonment, but if committed by an adult on a 14 or 15–year–old child, there is merger of offenses and the maximum punishment for the act will be reduced to one year. Construing the statutes as the majority does could conceivably encourage the sexual exploitation of 14 or 15–year–old children. The majority's decision is at best illogical, but it is inexcusable to blame the legislature and suggest that such a result is what the legislature intended when they enacted § 554 and § 464C.

I respectfully dissent.